FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

ROSENDO VALDIVIAS-SOTO,

*Defendant-Appellee*.

No. 20-10415

D.C. No.
5:18-cr-00505-
BLF-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted March 28, 2023
San Francisco, California

Filed August 9, 2024

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Korman;
Dissent by Judge Ikuta

[*] The Honorable Edward R. Korman, United States District Judge for the
Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's judgment dismissing an indictment charging Rosendo Valdivias-Soto ("Valdivias") with illegally reentering the United States after he had previously been removed.

The district court granted Valdivias's motion to dismiss the indictment on the ground that the removal order underlying the illegal reentry charge was invalid.

8 U.S.C. § 1326(d) sets forth three requirements for a collateral challenge to a removal order.

The panel held that Valdivias satisfied the requirement in 8 U.S.C. § 1326(d)(3) that the entry of the order was fundamentally unfair. Valdivias's right to counsel was effectively lost in translation by the interpreter's repeated use of the Spanish word for "hire" in describing that right during the removal hearing, incorrectly suggesting that Valdivias could enjoy the privilege of being represented only if he could pay for an attorney. As a result of the erroneous translation, Valdivias did not enter a knowing and voluntary waiver of the right to counsel. Because Valdivias was nevertheless allowed to proceed *pro se*, his removal hearing violated due process. The translation errors at his removal hearing also rendered his waiver of the right to appeal invalid, and the immigration judge's acceptance of his waiver therefore violated Valdivias's due process rights.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that notwithstanding Valdivias's failure to appeal the removal order to the BIA, he satisfied the requirement in 8 U.S.C. § 1326(d)(1) that the alien exhaust any administrative remedies that may have been available. The IJ's erroneous advice about Valdivias's right to counsel was not an error on the merits, but a misstatement concerning the procedural rules for obtaining administrative remedies. Accordingly, the erroneous translations at Valdivias's removal hearing rendered administrative review of his removal order unavailable.

The panel held that because Valdivias's waiver of his right to appeal was invalid, he satisfied the requirement in 8 U.S.C. § 1326(d)(2) that he was improperly deprived of the opportunity for judicial review.

Judge Ikuta dissented. She wrote that Valdivias failed to show that he met any of the requirements in § 1326(d), and that in holding otherwise, the majority misreads the applicable immigration laws and revives the long line of Ninth Circuit cases—overruled by *United States v. Palomar-Santiago*, 593 U.S. 321 (2021)—that concluded that where one statutory requirement was met, the alien was automatically excused from demonstrating the other two.

## COUNSEL

Merry J. Chan (argued), Assistant United States Attorney; Matthew M. Yelovich, Chief, Appellate Section, Criminal Division; Stephanie M. Hinds, Acting United States Attorney; Ismail J. Ramsey, United States Attorney; Department of Justice, Office of the United States Attorney, San Francisco, California; Scott Simeon, Assistant United States Attorney, Department of Justice, Office of the United

States Attorney, San Jose, California; for Plaintiff-Appellant.

Dejan M. Gantar (argued), Graham Archer, and Lara S. Vinnard, Assistant Federal Public Defenders; Jodi Linker, Federal Public Defender; Geoffrey A. Hansen, Acting Federal Public Defender; Federal Public Defenders Office, Northern District of California, San Jose, California; for Defendant-Appellee.

## OPINION

KORMAN, District Judge:

Rosendo Valdivias-Soto ("Valdivias") was indicted for illegally reentering the United States after he had previously been removed. This appeal presents the issue of whether he may successfully raise errors in his removal proceeding as a defense to his indictment. The district court held that he could and dismissed the indictment. It held that translation errors and misstatements by the immigration judge ("IJ") about Valdivias's rights to be represented by counsel and to an appeal violated due process. We affirm.

## I.  Background

Valdivias, a 45-year-old native and citizen of Mexico, first entered the United States illegally in 1999, at the age of 19. In 2011, he was convicted of conspiring to cultivate marijuana in violation of California Penal Code § 182—a felony at the time, but a misdemeanor in California today.

### A. Removal Proceedings

While incarcerated for that offense, Valdivias appeared without counsel via teleconference in removal proceedings before an IJ. He speaks only Spanish and is unable to read or write in Spanish or English. The IJ spoke to Valdivias, along with other respondents at the proceedings, through a Spanish interpreter. Throughout the hearing, the interpreter translated the IJ's statements about the right to counsel using the verb "contratar," meaning "to hire."[1] For example, the IJ advised the group: "At this and every hearing, gentlemen, you can have an attorney, but the government will not pay for your attorney. . . . [I]f you want an attorney, you must find one for yourself at no expense to the government." This was translated as: "[I]n this proceeding and any other one that you have with immigration, you can *hire* an attorney. The government does not pay for the service of an attorney. Each one who, then, wants to *hire* an attorney goes and *hires* one at his own expense." The IJ then said, as translated: "[T]o each one who would like to look for an attorney to *hire* one, a list of local legal services has been provided. When the people signed up on the list, those attorneys indicate[d] to the judge that they can do cases free of charge and others for a low fee." The IJ explained, again, as translated, that "if anyone would like to *hire* an attorney," the IJ would postpone their case for a later date. Valdivias then waived his right to counsel and opted to represent himself.

Next, the IJ informed the group about their right to appeal any decision in their case. The IJ explained, as translated, that if they "need[ed] an attorney to help" with the appeal process, they could (once again) "*hire* one."

---

[1] *Contratar*, Collins Spanish Dictionary (5th ed. 1998) ("to hire, engage").

Valdivias stated that he understood his right to appeal and, after a brief dialogue, admitted the Government's allegations. The IJ then found him removable.

The IJ also told Valdivias that his crime of conviction was an aggravated felony and that he was therefore "ineligible for any relief or remedy."[2] When asked if he would like to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"), Valdivias inquired whether, if he did, he would be "let . . . go on the same date." The IJ replied, as translated: "After that, yes, but . . . to prison they send you over here to the immigration authorities, Ok? They take you . . . out." Valdivias said he did not want to appeal, but, when asked again later, sought clarification: "Well, like, I don't have any chance there . . . from what I'm hearing." The IJ responded, as translated: "[Y]ou have to see if you have opportunities or not. I already told you what your rights are." Valdivias then confirmed that he did not wish to appeal. He was subsequently deported in February 2012 pursuant to a removal order.

## B. District Court Proceedings

In February 2015, Valdivias was found in the United States and was indicted for illegal reentry in violation of 8 U.S.C. § 1326. To support his defense to the indictment, he was evaluated by a neuropsychologist and diagnosed with major neurocognitive disorder stemming from a history of traumatic brain injury dating back to his childhood. The doctor rated Valdivias's "understanding of what he is told" as "extremely low" and concluded that he lacked "the

---

[2] According to the transcription submitted by Valdivias to the district court, this was translated as: "It's an aggravated felony. That means you don't quality [sic] for any (inaudible) or remedy."

attentional focus and working memory to understand complex information." The doctor also concluded that Valdivias's cognitive profile was consistent with brain damage caused by skull fractures he incurred during an assault in 2002 "superimposed upon an already vulnerable brain" due to "a severe traumatic brain injury around the age of twelve."

Valdivias moved to dismiss the indictment on the ground that the removal order underlying his illegal reentry charge was invalid. In so doing, he relied on *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), which held that defendants charged with illegal reentry have a due process right to mount such a collateral challenge if "defects in" their removal proceeding "foreclose[d] judicial review of that proceeding." *Id.* at 838–39. That right is reflected in § 1326, which Congress amended in 1996 by adding a new subsection (d) that expressly authorizes collateral challenges to the extent required by *Mendoza-Lopez*. Subsection (d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b)[3] unless the alien demonstrates that—
>
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

---

[3] Subsection (a) sets out the basic offense for illegal reentry by a previously removed noncitizen. Subsection (b) provides for enhanced penalties in certain circumstances.

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Valdivias argued that his waiver of the right to be represented by counsel in his immigration proceedings and his waiver of the right to appeal his removal order were both defective because he had been misinformed by the IJ and misled by translation errors at his removal hearing about the content of both rights. Consequently, the subsequent entry of his removal order was "fundamentally unfair," and he satisfied the exhaustion and deprivation of judicial review requirements of § 1326(d)(1) and (2). The district court agreed.

First, it concluded that Valdivias's waiver of his right to counsel had not been knowing and voluntary because the interpreter at his removal hearing erroneously translated his right to counsel as the right to "hire" an attorney. The district court also found that Valdivias was inadequately advised about the availability of pro bono legal services at the immigration court, as required by 8 C.F.R. § 1240.10(a)(2). Second, the district court concluded that Valdivias's waiver of his right to appeal his removal order had not been considered and intelligent because the IJ erroneously advised Valdivias that he was "ineligible for any relief or remedy" by virtue of his conviction when, in fact, he was plausibly eligible for a U-visa. Such a visa, or U nonimmigrant status, is an immigration benefit available to

certain victims of crime who have suffered mental or physical abuse and are helpful to law enforcement officials in investigating or prosecuting the crime. *See* 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(b). Valdivias was plausibly eligible for this benefit because, in 2002, he was assaulted while walking in East Palo Alto at night and subsequently gave information to a police officer investigating the crime.

Next, the district court held that Valdivias was prejudiced by his invalid waivers of the right to counsel and the right to appeal. Had Valdivias been able to pursue a counseled appeal of his removal order, the district court found that he could plausibly have obtained a U-visa and thereby prevented his deportation. Individuals with such a visa have temporary nonimmigrant status and a pathway to lawful permanent residency. *See* 8 U.S.C. § 1255(m); 8 C.F.R. § 245.24. Moreover, U.S. Immigration and Customs Enforcement ("ICE") policy is to seek the termination of removal proceedings against a noncitizen who has obtained a U-visa, even after a removal order has been issued.[4]

The district court also agreed that Valdivias satisfied § 1326(d)(1) and (2). It held that Valdivias was "deemed to have exhausted all the administrative remedies available to him and to have been deprived of the opportunity for judicial review" because the entry of his removal order was "fundamentally unfair." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 756 (9th Cir. 2015).

---

[4] Memorandum from Peter S. Vincent, Principal Legal Advisor, U.S. Immigr. & Customs Enf't, to the Off. of the Principal Legal Advisor, at 2 (Sept. 25, 2009), *available at* https://www.ice.gov/doclib/foia/dro_policy_memos/vincent_memo.pdf.

Accordingly, the district court dismissed the indictment against Valdivias.  The United States timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

We review de novo the district court's decision "on a motion to dismiss an indictment under 8 U.S.C. § 1326 [for illegal reentry] when the motion is based on alleged due process defects in an underlying deportation proceeding." *United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1047 (9th Cir. 2018) (alteration in original) (citation omitted).[5]

Section 1326 makes it a crime to reenter the United States after having been previously "removed."  8 U.S.C. § 1326(a)(1).  In *Mendoza-Lopez*, the Supreme Court held that the then-existing version of § 1326 failed to comport with due process because it barred all defendants charged with illegal reentry from collaterally challenging the validity of their removal orders.  481 U.S. at 833–37.  Due process requires that defendants have some opportunity for judicial review of their removal order before that order "may be used to establish conclusively an element of a criminal offense." *Id.* at 838.  Accordingly, if "defects" in a defendant's removal proceeding "foreclose[d] judicial review of that proceeding," the defendant must be allowed to challenge the

---

[5] The United States concedes that, because it did not raise the issue of Valdivias's compliance with 8 U.S.C. § 1326(d)(1) and (2) below, the issue is reviewed for plain error. *See United States v. Perez-Silvan*, 861 F.3d 935, 938 n.2 (9th Cir. 2017).  We have, however, recognized an exception to the plain error rule where "the new issue arises while the appeal is pending because of a change in the law," as is arguably the case here. *United States v. Grovo*, 826 F.3d 1207, 1221 n.8 (9th Cir. 2016) (quoting *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991)).  Regardless, we would reach the same conclusion under either standard and therefore review all issues de novo.

validity of the predicate removal order in a subsequent § 1326 prosecution. *Id.* And if the defects resulted in a "fundamentally unfair" proceeding, that removal order may not be used "as reliable proof of an element of a criminal offense." *Id.* at 839 n.17, 839–40.

Congress responded by enacting § 1326(d), which authorizes collateral challenges in certain circumstances. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 441, 110 Stat. 1214, 1279. Subsection (d) begins by setting out the general rule that "an alien may not challenge the validity of the deportation order" in a § 1326 prosecution. 8 U.S.C. § 1326(d). It then provides an exception if the defendant demonstrates that (1) "the alien exhausted any administrative remedies that may have been available" to contest the order; (2) the underlying removal proceedings "improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." *Id.* "These three elements, particularly the second, serve to ensure that a collateral challenge will be authorized in any case in which *Mendoza-Lopez*'s due process holding would require it." *United States v. Portillo-Gonzalez*, 80 F.4th 910, 916 (9th Cir. 2023). If the defendant satisfies all three prongs, the challenged removal order may not be used to establish any element of an illegal reentry offense. *See Mendoza-Lopez*, 481 U.S. at 839–40. Valdivias satisfies all three requirements. We begin with § 1326(d)(3)'s fundamental unfairness requirement.

## A. Fundamental Unfairness

"An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered

prejudice as a result of the defects." *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) (citation omitted). Valdivias contends, and the district court agreed, that his removal proceedings violated due process because the IJ accepted invalid waivers of his right to counsel and his right to appeal and that he suffered prejudice as a result. While disputing that Valdivias's waivers were invalid, the United States acknowledges that, if they were, he has shown prejudice.[6] Thus, the only contested element of the 'fundamental unfairness' inquiry is whether Valdivias's removal proceeding violated due process.

### 1. Waiver of Right to Counsel

The right to counsel is among the "crucial procedural protection[s]" that are necessary for removal proceedings to "meet the essential standards of fairness." *Usubakunov v. Garland*, 16 F.4th 1299, 1303 (9th Cir. 2021). In describing the importance of this protection, we have underscored the "high stakes of a removal proceeding and the maze of immigration rules and regulations" individuals must navigate in responding to a charge of removability. *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007). Indeed, we have called "[t]he proliferation of immigration laws and regulations," "a labyrinth that only a lawyer could navigate." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005).

---

[6] We agree. "A defendant need not conclusively demonstrate that he or she would have received relief to show prejudice, but must show only that there were 'plausible grounds for relief.'" *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010) (citation omitted). As the district court found, had Valdivias been able to pursue a counseled appeal, he could plausibly have obtained a U-visa and thereby averted his 2012 deportation.

"Rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and § 1229a(b)(4)(A)," the right to counsel in removal proceedings entitles respondents to be represented by an attorney of their choice, albeit not "to counsel paid for by the government." *Usubakunov*, 16 F.4th at 1303; *see also* 8 C.F.R. § 1003.16(b). Several regulations implement this right. For example, 8 C.F.R. § 1240.10(a)(1) requires the IJ to advise respondents in removal proceedings of their "right to representation, at no expense to the government, by counsel of [their] own choice authorized to practice in the proceedings." The regulations also require the IJ to advise respondents "of the availability of pro bono legal services" at the immigration court at which their hearing takes place, and to "ascertain that the respondent has received a list of such pro bono legal service providers." *Id.* § 1240.10(a)(2).

Accordingly, while there is no right to appointed counsel in removal proceedings, respondents who are unable to afford an attorney may still obtain representation. As the regulations envision, some attorneys offer free legal services, typically to respondents with limited ability to pay. *See* 8 C.F.R. § 1240.10(a)(2); *see also id.* § 1003.61(a)(2) ("Pro bono legal services are those uncompensated legal services performed for indigent individuals or the public good without any expectation of either direct or indirect remuneration . . . ."). Indeed, the director of the agency that includes the immigration courts is required by regulation to maintain a list of organizations, referral services, and attorneys qualified to provide pro bono legal services, and to provide that list to individuals in removal proceedings. *Id.* § 1003.61(b). To the extent a respondent can secure a pro bono attorney, the right to counsel entitles them to be represented by that attorney in their removal proceedings or on appeal.

"Notwithstanding the importance of counsel, a noncitizen may knowingly and voluntarily waive the right to counsel and proceed *pro se*." *Usubakunov*, 16 F.4th at 1304. "Failure to obtain such a waiver is a denial of the right to counsel." *Hernandez-Gil*, 476 F.3d at 806. The prosecution bears the burden of proving a valid waiver by "clear and convincing evidence." *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021). "We indulge every reasonable presumption against waiver, and do not presume acquiescence in the loss of fundamental rights," especially where, as here, an uncounseled respondent relied on an interpreter to understand the rights he purportedly waived. *United States v. Ramos*, 623 F.3d 672, 680–81 (9th Cir. 2010) (internal quotation marks and citation omitted). In determining the validity of a waiver, we "look not just to the immigration documents, but to all the surrounding circumstances." *De La Mora-Cobian*, 18 F.4th at 1148.

Considering these circumstances, Valdivias's right to counsel was effectively lost in translation by the interpreter's repeated use of the Spanish word for "hire" in describing that right. This suggested that Valdivias could enjoy the privilege of being represented only if he could pay for an attorney. But as the statutory and regulatory scheme make clear, Valdivias had the right to be represented by a pro bono attorney if he could locate one; and, indeed, he was entitled to a list of lawyers, organizations, and referral services willing to help him obtain pro bono representation. *See* 8 U.S.C. § 1229(b)(2); 8 C.F.R. §§ 1003.61(b), 1240.10(a)(2).

As a result of the erroneous translation, Valdivias did not enter a knowing and voluntary waiver. "[R]equiring an individual to proceed with the merits hearing without the assistance of counsel violates due process, absent a valid waiver of the right to counsel." *Gomez-Velazco v. Sessions*,

879 F.3d 989, 993 (9th Cir. 2018). Because Valdivias was allowed to proceed *pro se* without having validly waived his right to counsel, his removal proceedings violated due process.

The United States, however, contends that the interpreter's translation, taken as a whole, adequately conveyed Valdivias's rights. It notes that two decisions of this circuit and one of the Sixth Circuit have used the word "hire" to describe the right to counsel in immigration proceedings. *See Gonzalez-Veliz v. Garland*, 996 F.3d 942, 944, 949 (9th Cir. 2021) (referring to "right to hire an attorney" and noting that IJ advised noncitizen "of her right to an attorney at her own expense"); *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1127 & n.1 (9th Cir.) (referring to "right to hire counsel"), *reh'g granted, opinion withdrawn*, 868 F.3d 852 (9th Cir.), *and on reh'g*, 705 F. App'x 542, 544 (9th Cir. 2017) (same); *Mendoza-Garcia v. Barr*, 918 F.3d 498, 504 (6th Cir. 2019) (describing right to "hire counsel" and "be represented by retained counsel"). But none of these cases involved a challenge to the adequacy of an IJ's advice about the right to counsel. An IJ does not adequately advise respondents by telling them that if they want an attorney, they must "hire" one at their "own expense," and a decision's use of the word "hire" to generally describe the due process right outside the context of reviewing such advice does not suggest otherwise.

Our dissenting colleague responds that Valdivias was not entitled to automatically receive free representation—for example, the demand for pro bono services might have exceeded availability. Dissent at 45, n.4. But the dissent agrees that if a pro bono attorney was available, Valdivias could have exercised his right to counsel by obtaining one. *Id.* at 45. Where the dissent goes astray is in glossing over

the central issue of whether the IJ's advisement was in fact accurate. It was not: Valdivias's right to representation "at no expense to the government" is not equivalent to the right to "hire" counsel at one's "own expense." The former means the government won't pay, while the latter means the noncitizen must. To a noncitizen facing removal, that distinction matters.

On this point, the dissent's main contention—echoing the prosecution—is that, even if the translation was misleading, the IJ's subsequent advice about the list of pro bono legal services clarified any confusion Valdivias might have had. As translated, the IJ informed the group: "[T]o each one who would like to look for an attorney to hire one, a list of local legal services has been provided. When the people signed up on the list, those attorneys indicate[d] to the judge that they can do cases free of charge and others for a low fee." While this statement at least indicated that *some* attorneys on the list could accept cases free of charge, it suggested that others would demand a low fee, leaving it unclear whether Valdivias would in fact be able to locate a free attorney from the list.[7] On the whole, it did not convey

---

[7] Contrary to the IJ's suggestion, *all* attorneys on the list of pro bono legal service providers must be willing to offer their services free of charge to indigent individuals or for the public good. To be eligible for inclusion on the list, an attorney must be willing to "provide a minimum of 50 hours per year of pro bono legal services" to individuals appearing in the relevant immigration court. 8 C.F.R. § 1003.62(d)(2). The Executive Office for Immigration Review has made clear that "services provided for a reduced or nominal fee do not constitute 'pro bono' services." List of Pro Bono Legal Service Providers for Aliens in Immigration Proceedings, 79 Fed. Reg. 55662-01, 55663 (proposed Sept. 17, 2014); *see also* List of Pro Bono Legal Service Providers for Individuals in Immigration Proceedings, 80 Fed. Reg. 59503-01, 59504

to Valdivias what he needed to be told: that, if he could not afford an attorney, he would be able to have a pro bono attorney from the list represent him for free, subject only to the availability of the lawyers who had indicated they take pro bono clients.

Against the backdrop of Valdivias's diagnosis of major neurocognitive disorder, the inadequacy of the IJ's advice is even more stark. According to his doctor, Valdivias's condition, as described earlier, impairs his ability to understand complex information and deliberate among options. Taken together with the IJ's repeated suggestions that if Valdivias wanted an attorney, he would have to "hire" one, the IJ's generalized reference to the "list of local legal services" was inadequate to correct the earlier erroneous advice concerning Valdivias's right to counsel. Because Valdivias was nevertheless allowed to proceed *pro se*, his removal hearing violated due process.

## 2. *Waiver of Right to Appeal*

We also conclude that Valdivias did not validly waive his right to appeal. "A waiver of the right to appeal a removal order does not comport with due process when it is not 'considered and intelligent.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (citation omitted). As with a waiver of the right to counsel, the government bears the burden of proving a valid waiver of the right to appeal and the "presumption against waiver" applies. *Ramos*, 623 at 680.

Valdivias contends that his waiver of the right to appeal was not "considered and intelligent" on two distinct grounds:

---

(Oct. 1, 2015) ("[R]epresentation for a fee, even a nominal fee, is not pro bono representation.")

First, because the IJ advised him erroneously that he was "ineligible for any relief or remedy" due to his aggravated felony conviction; and second, because the erroneous translation of his right to counsel also affected his waiver of the right to appeal (in addition to his waiver of the right to counsel). While the first of these grounds lacks merit, the translation errors at his removal hearing rendered his waiver of the right to appeal invalid.

### i.  *Eligibility for Relief or Remedy*

At Valdivias's removal proceeding, the IJ advised Valdivias and the other respondents whom he was also addressing: "You might be eligible for some kind of relief or remedy which would excuse you from removal." The IJ then listed several examples of such relief and informed the group, "[i]f you are eligible for any kind of relief or remedy I will tell you and give you the chance to apply for it." Later, when the IJ spoke individually with Valdivias, the IJ informed him that, because his conviction for conspiracy to cultivate marijuana was, at the time, an "aggravated felony," he was "ineligible for any relief or remedy."[8] When asked if he would like to appeal, Valdivias responded, "[w]ell, like, I don't have any chance there, uh, from what I'm hearing,"

---

[8] Section 1240.11(a)(2) of Title 8 of the Code of Federal Regulations requires an IJ to advise noncitizens in removal of their potential eligibility for "benefits enumerated in" Chapter V of that Title if "apparent" from the record before the IJ. If the respondent is apparently eligible for relief, the IJ must also give the respondent the opportunity to apply during the removal hearing. 8 C.F.R. § 1240.11(a)(2). "[B]ecause U nonimmigrant status is not a Chapter V benefit," an "IJ's failure to address the U nonimmigrant form of relief [does] not violate § 1240.11(a)(2)." *Zamorano v. Garland*, 2 F.4th 1213, 1224 (9th Cir. 2021).

to which the IJ replied, "you have to see if you have opportunities or not."

The district court found that the IJ "affirmatively misled" Valdivias because Valdivias was in fact undisputedly eligible for a U-visa based on the 2002 assault he suffered in East Palo Alto and his subsequent cooperation with law enforcement. Relying principally on our decision in *United States v. Cisneros-Rodriguez*, 813 F.3d 748 (9th Cir. 2015), the district court concluded that Valdivias's waiver of his right to appeal was therefore invalid. In *Cisneros-Rodriguez*, we held that a noncitizen who was told by an ICE agent that "an attorney would not help her" did not knowingly waive her right to counsel. 813 F.3d at 757 (cleaned up). "It is difficult to comprehend," we explained, "how an unrepresented alien could execute a 'considered and intelligent' waiver of her right to counsel if she has been informed by an ICE agent, just prior to executing the waiver, that the exercise of that right would be futile." *Id.* The district court here reasoned that, by analogy, Valdivias could not have entered a "considered and intelligent" waiver of his right to appeal just after being "affirmatively misled about the possibility of relief" by the IJ.

Valdivias's case, however, is distinguishable from *Cisneros-Rodriguez*. The IJ did not tell Valdivias that exercising his right to appeal would be futile. To the contrary, after determining that Valdivias was "ineligible for any relief or remedy," the IJ informed Valdivias, "[b]ut you can appeal," and explained: "If you appeal, the Board of Appeals may let you go free and you won't be removed by expulsion. Do you understand?" When Valdivias responded, "I don't have any chance there," the IJ clarified that Valdivias would have to "see if [he had] opportunities or not" on appeal. This is different from telling a noncitizen

that an attorney—or, for that matter, an appeal—"would not help." *See Cisneros-Rodriguez*, 813 F.3d at 757. The IJ's advice conveyed to Valdivias that he had the right to appeal and that it was possible he could obtain relief by doing so.

*Palomar-Santiago*, 593 U.S. 321 (2021), and our recent decision in *Portillo-Gonzalez*, 80 F.4th 910 (9th Cir. 2023), reinforce this conclusion. Specifically, *Palomar-Santiago* held that an IJ's "error on the merits" does not excuse a defendant from § 1326(d)(1)'s statutory requirement to administratively appeal their removal order "if further administrative review, and then judicial review if necessary, could fix that very error." 593 U.S. at 328. The case involved a defendant who had been removed from the United States on the ground that his conviction for DUI was an aggravated felony. *Id.* at 325; *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (making conviction for an "aggravated felony" after admission a ground for removal). In his subsequent prosecution for illegal reentry, the defendant sought to challenge his removal order on the ground that intervening Supreme Court precedent made clear that DUI is not an aggravated felony and thus not a removable offense. 593 U.S. at 325–26 (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004)). To overcome § 1326(d)(1)'s statutory exhaustion requirement, the defendant argued that no administrative appeal had been "available" to him because the IJ "erroneously inform[ed]" him "that his prior conviction render[ed] him removable," preventing him from "recogniz[ing] a substantive basis for appeal to the BIA." *Id.* at 327. The Supreme Court rejected this argument, explaining that "[a]dministrative review of removal orders exists precisely so noncitizens can challenge the *substance* of immigration judges' decisions." *Id.* at 328 (emphasis added). Thus, a substantive error, such as an erroneous

determination of removability, does not establish that a noncitizen was unable to appeal to the BIA—even if the IJ's error led the noncitizen to believe they had no "substantive basis" for an appeal. *See id.* at 327.

By the same token, an IJ's "error on the merits" does not, on its own, prevent a defendant from entering a "considered and intelligent" waiver of their right to appeal. Our decision in *Portillo-Gonzalez* made this logical consequence of *Palomar-Santiago* clear. The defendant in *Portillo-Gonzalez* sought to challenge his removal order in a § 1326 prosecution on the ground that the IJ at his removal proceeding misinformed him about his eligibility for voluntary departure.[9] 80 F.4th at 914. Despite not having appealed his removal order to the BIA, the defendant argued that no appeal was "practically available" to him because the IJ's misstatement "tainted his subjective understanding about the value of an appeal." *Id.* at 919. In so arguing, the defendant relied on a line of Ninth Circuit cases holding that "an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to appeal the removal and seek such relief and *has not validly waived his or her right to appeal.*" *Id.* at 917 (emphasis added) (internal quotation marks omitted) (quoting *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013)).

---

[9] Voluntary departure is a form of relief that permits certain noncitizens to voluntarily leave the United States at their own expense in lieu of removal. *See* 8 U.S.C. § 1229c. The defendant in *Portillo-Gonzalez* claimed that the IJ relied on superseded regulations to erroneously inform him that he could not be considered for voluntary departure unless he could demonstrate the means to immediately depart the country. 80 F.4th at 914.

We rejected this argument and concluded that "this line of case authority" on which the defendant relied could not be reconciled with *Palomar-Santiago. Id.* at 918. *Palomar-Santiago*, we explained, held that "an 'immigration judge's error on the merits' does *not* establish that an appeal is unavailable" because the appeals process exists precisely to correct such errors. *Id.* (quoting *Palomar-Santiago*, 593 U.S. at 328). For the same reason, an IJ's substantive error does not prevent a defendant from entering a "considered and intelligent" waiver of the right to appeal "if further administrative review, and then judicial review if necessary, could fix that very error." *See id.* (citation omitted).

Like the purported misstatements in *Palomar-Santiago* and *Portillo-Gonzalez*, the IJ's statement here concerned a "substantive issue"—namely, Valdivias's eligibility for relief. *See id.* at 919 (eligibility for voluntary departure is a substantive issue); *cf. also Palomar-Santiago*, 593 U.S. at 328 (removability is a substantive issue). While neither the IJ nor the BIA was authorized to determine his eligibility for a U-visa—only U.S. Citizenship and Immigration Services ("USCIS") may do so, *see* 8 C.F.R. § 214.14(c)—that does not render the issue any less substantive.[10] Valdivias does not contend that the IJ misinformed him of his ability to

---

[10] The IJ's lack of jurisdiction to grant or determine eligibility for U-visas does, however, underscore the awkwardness of interpreting the IJ's statement as speaking to that form of relief. As noted, 8 C.F.R. § 1240.11(a)(2) requires IJs to advise noncitizens in removal of their apparent eligibility for certain forms of relief (not including U-visas). So long as an IJ reasonably conveys that advice, the IJ need not adhere to any talismanic formulation. *Cf. United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir. 2017) ("[A] talismanic incantation is not necessary to satisfy *Miranda*'s strictures." (internal quotation marks omitted) (citation omitted)).

*apply* for a U-visa while appealing his removal order; only that his conviction rendered him substantively *ineligible* for that relief.

To the extent the IJ's statement was erroneous, an appeal could have obviated its effect. Had Valdivias appealed, he could have petitioned the proper agency—USCIS—for a U-visa while his appeal was pending. *See* 8 C.F.R. § 214.14(c)(1)(i). And he could have requested a continuance of his removal proceedings pending the adjudication of his petition. *See Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 812–15 (BIA 2012) (describing when a continuance may be warranted pending adjudication of a noncitizen's U-visa petition). If the IJ's statement led Valdivias to believe (incorrectly) that the IJ was authorized to determine his eligibility for a U-visa, the BIA could have advised him that only USCIS could do so and told him how to apply. *See Matter of Castaneda Mejia*, 2011 WL 5326091, at *1 (B.I.A. Oct. 19, 2011) (denying motion to remand based on potential eligibility for a U-visa but identifying the proper petition form and informing noncitizen which agency to submit it to). To the extent Valdivias argues he was prevented from appealing because the IJ's advice led him to believe he had no grounds for an appeal, that argument was rejected by *Portillo-Gonzalez* and *Palomar-Santiago*. *See Palomar-Santiago*, 593 U.S. at 328–29 (rejecting argument that administrative remedies are not "available" when a noncitizen fails to "recognize a substantive basis for appeal" due to an IJ's substantive error); *Portillo-Gonzalez*, 80 F.4th at 919 (rejecting argument that "IJ's error about the scope of voluntary departure tainted [the defendant's] subjective understanding about the value of an appeal," preventing him from appealing).

Valdivias attempts to distinguish his case on the ground that he was "affirmatively misinformed" about his eligibility for relief and "expressly relied on" the IJ's "misrepresentation when waiving his right to appeal." But both *Portillo-Gonzalez* and *Palomar-Santiago* involved "affirmative" statements by an IJ as well. *See id.* at 914 (statement that defendant "could not be considered for voluntary departure unless he was then in possession of $5 to cover the cost of travel to Nogales"); *see also Palomar-Santiago*, 593 U.S. at 327 (statement that defendant's prior conviction rendered him removable). And, as just noted, both rejected the argument that a defendant can be excused from appealing a removal order simply because an IJ's substantive error tainted the defendant's "subjective understanding about the value of an appeal."[11] *Portillo-Gonzalez*, 80 F.4th at 918; *see also Palomar-Santiago*, 593 U.S. at 327–28.

In sum, the IJ's statement that Valdivias was "ineligible for any relief or remedy" due to his prior conviction did not convey that an appeal would be futile and did not prevent Valdivias from entering a "considered and intelligent" waiver of his right to appeal.

### ii. Advisement of Right to Counsel on Appeal

Nevertheless, the translation errors at Valdivias's removal hearing rendered Valdivias's waiver of his right to

---

[11] Valdivias suggests that the outcome in *Portillo-Gonzalez* turned on the ground that the IJ's error there did *not* taint the defendant's "subjective understanding about the value of an appeal." *See Portillo-Gonzalez*, 80 F.4th at 919. To the contrary, *Portillo-Gonzalez* held that a defendant is not excused from the requirement to exhaust administrative remedies *even if* an IJ's substantive error led the defendant to believe an appeal would be unsuccessful. *Id.*

appeal invalid for two reasons. First, the translation errors denied Valdivias the opportunity to have an attorney advise him about the potential benefits of appealing. To punish Valdivias for failing to appreciate the value of an appeal when he never voluntarily assumed the risk of proceeding without an attorney would "presume acquiescence in the loss of fundamental rights," *Ramos*, 623 F.3d at 680–81—especially where, as here, the United States concedes he had a plausible path to relief.

Second, Valdivias was specifically misled as to his right to counsel *on appeal*. Pursuant to 8 U.S.C. § 1362, the right to counsel "at no expense to the government" extends to "appeal proceedings before the Attorney General," which includes appeals to the BIA. 8 U.S.C. § 1362; *see also* 8 C.F.R. § 1003.1(b)(3) (delegating appellate jurisdiction over removal orders to the BIA). At his hearing, the IJ advised Valdivias, as translated: "in the appeal process, [if] you need an attorney to help[] you, you can *hire* one." By this time, Valdivias had been repeatedly told that if he wanted an attorney, he would have to "hire" one. And the IJ had advised him that he would have to do so "at his own expense." Valdivias would reasonably have understood the IJ's advice to mean that he was only entitled to have a lawyer represent him in an appeal before the BIA if he could afford to "hire" one. But as already discussed, Valdivias could have been represented by a pro bono attorney and, in fact, was entitled to receive a list of attorneys willing to offer their services for free.

Moreover, these translation errors plausibly led Valdivias to waive his right to appeal. *Cf. Ramos*, 623 F.3d at 684 (requiring defendant to show "*plausible* grounds for relief" to establish that denial of right to counsel or right to appeal was prejudicial (emphasis added) (citation omitted)).

To begin, the United States concedes that an attorney would have helped Valdivias better assess his reasons to appeal. And had he pursued a counseled appeal, the United States does not dispute that Valdivias could plausibly have obtained a U-visa and thereby prevented his deportation.[12] It is at least plausible that, had he not been misinformed of his right to counsel, Valdivias would have sought an attorney's advice, been informed of this potential path to relief, and appealed his removal order.

In addition, the erroneous translation of his right to counsel *on appeal* plausibly deterred Valdivias from appealing. Valdivias was appointed a federal public defender in this case, meaning that, at the time of his arraignment, the magistrate judge determined that he was unable to afford counsel. *See* 18 U.S.C. § 3006A (defendant must be "financially unable to obtain counsel" to be appointed counsel); *see also* Arraignment Minutes, Case No. 5:18-cr-00505-BLF, Dkt. No. 3. And there is no reason to believe he was better able to afford counsel at the time of his removal hearing. Moreover, Valdivias speaks only Spanish, cannot read or write in English or Spanish, and has a history of traumatic brain injury that affects his ability to understand complex information. Facing the prospect of representing

---

[12] Indeed, had he appealed his removal order and applied for a U-visa, ICE policy was to seek a continuance of his proceedings until USCIS could determine whether he was facially eligible for that benefit. *See* Memorandum from Peter S. Vincent, Principal Legal Advisor, U.S. Immigr. & Customs Enf't, to the Off. of the Principal Legal Advisor (Sept. 25, 2009). If USCIS found him to be facially eligible for a U-visa, ICE policy was to then terminate his proceedings and stay his removal. *See id.*; *see also* 8 C.F.R. § 214.14(c)(1)(i)–(ii) (providing that ICE may stay removal and seek termination of proceedings upon filing of a U-visa application).

himself before the BIA, it is plausible that being told he could only have an attorney on appeal if he could "hire" one discouraged him from appealing. In sum, the impact of the translation errors taken together could plausibly have led Valdivias not to appeal his removal order.

Consequently, the United States has not carried its burden to overcome the presumption against waiver. Valdivias's waiver of the right to appeal was not "considered and intelligent" and the IJ's acceptance of his waiver therefore violated Valdivias's due process rights.

## B. Administrative Exhaustion

Next, we turn to whether Valdivias "exhausted any administrative remedies that may have been available to seek relief against" his removal order, as required by § 1326(d)(1). Three relatively recent precedents clarify what § 1326(d)(1) requires a defendant to demonstrate.

### 1. Legal Precedents

First, in *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court explained that, in certain circumstances, administrative remedies are not "available" and therefore need not be exhausted to satisfy a statutory exhaustion requirement. *Ross* addressed a provision of the Prison Litigation Reform Act ("PLRA") that—in similar terms to § 1326(d)(1)—requires prisoners to exhaust "such administrative remedies as are available" before suing in federal court. *Compare* 42 U.S.C. § 1997e(a), *with* 8 U.S.C. § 1326(d)(1) (requiring exhaustion of "administrative remedies that may have been available"). The Supreme Court explained that an administrative remedy is not "available" if it is not "capable of use" to obtain relief and set forth three circumstances in which this is the case:

(1) when the administrative procedure operates as a simple dead end; (2) when the administrative scheme is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, intimidation, or (most relevant here) misrepresentation.**[13]** *Ross*, 578 U.S. at 643–44.

Neither we nor the Supreme Court have resolved the issue of whether the standard delineated by *Ross* in the PLRA context also applies to § 1326(d)(1)'s exhaustion requirement. *See Palomar-Santiago*, 593 U.S. at 328 (referencing the *Ross* exceptions); *Portillo-Gonzalez*, 80 F.4th at 920 (assuming without deciding that *Ross* applies in the § 1326(d)(1) context). We conclude that it does. Indeed, both the PLRA and § 1326(d)(1) contain the *same* "textual exception to mandatory exhaustion"—they require exhaustion of "available" remedies only. *Ross*, 578 U.S. at 642. Accordingly, we look to *Ross*, its progeny, and the exemplary circumstances to which *Ross* referred to determine if administrative remedies are "unavailable" to a noncitizen for purposes of § 1326(d)(1)'s exhaustion requirement.

Subsequently, the Supreme Court built on *Ross* in *Palomar-Santiago*. First, it held that—like the PLRA's exhaustion requirement—each prong of § 1326(d) is "mandatory." 593 U.S. at 326 (quoting *Ross*, 578 U.S. at 639). Second, it clarified that an IJ's "error on the merits" does not render administrative remedies unavailable

---

[13] *Ross* did not decide whether these three categories are exclusive, but instead held that the "capable of use" standard must be applied "to the real-world workings of prison grievance systems." *Ross*, 578 U.S. at 643.

pursuant to the textual exception recognized in *Ross* "if further administrative review, and then judicial review if necessary, could fix that very error." 593 U.S. at 328. As discussed above, *Palomar-Santiago* involved a defendant's attempt to challenge his removal order in a § 1326 prosecution on the ground that the IJ had erroneously found him removable based on his DUI conviction. *Id.* at 325–26 (citing *Leocal*, 543 U.S. 1). The district court dismissed the indictment notwithstanding the defendant's failure to appeal his removal order; and we affirmed based, in part, on our cases holding that "defendants are excused from proving the first two requirements of § 1326(d) if they were not convicted of an offense that made them removable." *Id.* at 326 (cleaned up) (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)).

The Supreme Court reversed, holding that defendants must satisfy all three requirements of § 1326(d) regardless of the "substantive validity" of the predicate removal order. *Id.* at 327. Distinguishing the circumstances in *Ross* where a remedy is "not capable of use," it explained that "further administrative review, and then judicial review if necessary," could have corrected the IJ's substantive determination that the defendant's DUI conviction rendered him removable. *Id.* at 328. Consequently, administrative remedies were "available" to the defendant and he was not excused from satisfying § 1326(d)(1) and (2). *Id.*

Finally, we first applied *Palomar-Santiago* in our decision in *Portillo-Gonzalez*. In that case, we reviewed a district court's denial of the defendant's motion to dismiss an indictment charging him with illegal reentry. 80 F.4th at 914. The defendant argued that, despite not having appealed his removal order to the BIA, he "effectively satisfied the first two elements of § 1326(d)" because the IJ at his

removal hearing misinformed him about his eligibility for voluntary departure. *Id.* at 917 (cleaned up). This rendered an appeal "unavailable," argued the defendant, and invalidated his waiver of his right to appeal. *Id.* at 917–18.

In rejecting this argument, we outlined the limits of any textual exception rooted in the term "available" as used in § 1326(d)(1). First, we acknowledged *Palomar-Santiago*'s holding that administrative remedies are not "unavailable" for purposes of § 1326(d)(1) because of an IJ's "error on the merits" that could be fixed on appeal. *Id.* (quoting *Palomar-Santiago*, 593 U.S. at 328). Next, we acknowledged *Ross*'s instruction that certain misrepresentations "as to the existence or rules of the grievance process" render administrative remedies unavailable. *Id.* at 920 (quoting *Ross*, 578 U.S. at 644 n.3). Nevertheless, we found that the IJ had "informed Portillo-Gonzalez of his right to appeal" and "[t]here was no misrepresentation . . . as to the rules or procedural steps governing such appeals." *Id.* Accordingly, even if the IJ misapplied the eligibility standards for voluntary departure, "an appeal *would* have fixed that very error," so administrative remedies had been "available" to the defendant. *Id.* at 918.

Together, *Ross*, *Palomar-Santiago*, and *Portillo-Gonzalez* delineate several contours of § 1326(d)(1)'s exhaustion requirement. First, the exhaustion requirement—like all § 1326(d)'s requirements—must be satisfied in every case. But defendants need only have exhausted administrative remedies that were "available" to them. § 1326(d)(1); *see also Ross*, 578 U.S. at 642. To identify when a remedy is "[in]capable of use" and thus "unavailable," it is necessary to look to "the real-world workings of" the immigration court system. *See Ross*, 578 U.S. at 643. But at a minimum, such circumstances include

those identified in *Ross*, including when immigration officials "thwart [respondents] from taking advantage of [a remedy] through . . . misrepresentation." *Id.* at 644.

Not *every* misstatement by an IJ, however, will satisfy § 1326(d)(1)'s textual exception. In particular, an IJ's "substantive error of immigration law" does not excuse a defendant from administratively appealing "if further administrative review, and then judicial review if necessary," exists to "fix that very" type of error. *Portillo-Gonzalez*, 80 F.4th at 918 (quoting *Palomar-Santiago*, 593 U.S. at 328). On the other hand, administrative remedies are not "available" if the IJ "misled" the defendant "as to the existence or rules of the . . . process" for obtaining them. *Id.* at 920 (quoting *Ross*, 578 U.S. at 644 n.3). Accordingly, whether an IJ's misstatement renders administrative review unavailable will often turn on whether the statement concerns "the rules or procedural steps governing such appeals."[14] *Id.*

## 2. Application

Applying these principles here, Valdivias satisfies § 1326(d)(1) notwithstanding his failure to appeal his removal order to the BIA because he "need not exhaust"

---

[14] The United States suggests that *Portillo-Gonzalez* "reject[ed] the distinction between substantive and procedural errors." But the passage it cites from *Portillo-Gonzalez* for support simply confirms that a challenge to an IJ's procedural error is "governed by the limitations of § 1326(d)" no less than a challenge based on an IJ's substantive error— that is, regardless of the type of error alleged, the noncitizen must satisfy the exhaustion requirement. *Portillo-Gonzalez*, 80 F.4th at 919. Nevertheless, *Portillo-Gonzalez* makes clear that an IJ's "misleading statement about appeal rights or procedures" falls within *Ross*'s "misrepresentation" exception, while an IJ's "substantive mistake" does not. *Id.* at 920.

unavailable remedies. *Ross*, 578 U.S. at 642. The right to counsel in removal proceedings is a "*procedural* protection." *Usubakunov*, 16 F.4th at 1303 (emphasis added). The IJ's erroneous advice about Valdivias's right to counsel was therefore not an "error on the merits," but a misstatement of the type described in *Ross* concerning the *procedural rules* for obtaining administrative remedies. *See Portillo-Gonzalez*, 80 F.4th at 920 (citing *Ross*, 578 U.S. at 644 n.3).

Accordingly, for much the same reasons that Valdivias's waiver of his right to appeal was invalid, the erroneous translations at Valdivias's removal hearing rendered administrative review of his removal order unavailable. First, Valdivias was led to believe that, unless he could afford to "hire" counsel, only a *pro se* appeal was available to him. This misstated the "rules of the . . . process" for seeking administrative review because Valdivias could have been represented on appeal by a pro bono attorney. *Portillo-Gonzalez*, 80 F.4th at 920 (citation omitted). Second, the erroneous translations that resulted in Valdivias's invalid waiver of his right to counsel also denied him the assistance of counsel in identifying potential paths for obtaining relief and assessing whether to appeal. These erroneous translations "thwart[ed]" Valdivias "from taking advantage of" the appeals process because, as already discussed, he plausibly waived his right to appeal because of them.[15] *Ross*, 578 U.S. at 644.

---

[15] The dissent contends that, even if Valdivias was misled about the availability of counsel, an administrative appeal was still "available" to him because he might nevertheless have appealed his removal order pro se. Dissent at 50–51. But *Ross* does not invite courts to overlook misrepresentations about "the rules or procedural steps governing . . .

Valdivias's case thus falls squarely within the "misrepresentation" category described in *Ross*. *Ross*, 578 U.S. at 644. The translation errors misled Valdivias as to the procedural rules of his removal proceeding and "thwart[ed]" him from appealing his removal order to the BIA. *See id.* Consequently, no further administrative remedies were "available" to him and he satisfies § 1326(d)(1).

## C. Deprivation of Judicial Review

Finally, Valdivias satisfies § 1326(d)(2). Noncitizens who are unable to appeal their removal order because they entered a waiver of their right to appeal that was not considered and intelligent have been improperly deprived of judicial review. *Mendoza-Lopez*, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."). Indeed, noncitizens are typically barred from obtaining judicial review of a removal order without first appealing to the BIA. *See* 8 U.S.C. § 1252(d)(1). Accordingly, because Valdivias's waiver of his right to appeal was invalid, he was "improperly

---

appeals" simply because a noncitizen might theoretically navigate the appeals process despite them. *Portillo-Gonzalez*, 80 F.4th at 919–20. To the contrary, the examples provided in *Ross* make clear that administrative remedies are unavailable when officials misrepresent the "rules of the [administrative] process so as to *cause* the inmate [or noncitizen] to fail to exhaust such process." *Ross*, 80 F.4th at 920 (emphasis added) (quoting *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015)). The misrepresentation, in other words, must cause the failure to exhaust—it need not make the failure inevitable.

deprived" of judicial review of his removal order and satisfies § 1326(d)(2).[16]

## III. Conclusion

Based on the foregoing, Valdivias satisfies each of § 1326(d)'s three requirements.[17]  Valdivias's challenge to the validity of his removal order is therefore not statutorily barred and his removal order may not be used to "establish conclusively an element of a criminal offense." *Mendoza-Lopez*, 481 U.S. at 838.

**AFFIRMED.**

---

[16] *Palomar-Santiago*'s holding that each requirement of § 1326(d) is "mandatory" does not, as the dissent suggests, mean that a consequential error by an IJ—here, a series of mistranslations—cannot satisfy all three. Recall that § 1326(d) "ensure[s] that a collateral challenge will be authorized in any case in which *Mendoza-Lopez*'s due process holding would require it." *Portillo-Gonzalez*, 80 F.4th at 916.  *Mendoza-Lopez* itself involved an IJ's failure to adequately advise the defendants in that case of two rights: their "right to suspension of deportation" and "their right to appeal"—but the case's holding hinged on the latter.  481 U.S. at 839–40 (requiring collateral review of deportation orders because "the [defendants'] waivers of their rights to appeal were not considered or intelligent").   Under the dissent's view—that a single due process violation cannot satisfy all three requirements—§ 1326(d) would foreclose the very outcome in *Mendoza-Lopez* that the statutory provision is understood to enshrine.  Nothing in *Palomar-Santiago* suggests such an incongruous result.

[17] While we affirm the decision below, we note that the district court's conclusion—which the United States contested for the first time on appeal—that a defendant is "deemed" to have satisfied § 1326(d)(1) and (2) if they satisfy § 1326(d)(3) is inconsistent with *Palomar-Santiago*'s holding that all three requirements are "mandatory."  593 U.S. at 326. To the extent our decisions have held otherwise, they cannot be reconciled with *Palomar-Santiago* and have been abrogated by that case. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

IKUTA, Circuit Judge, dissenting:

Aliens in criminal proceedings cannot collaterally challenge removal orders in district court unless "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(1)–(3). The Supreme Court has made clear that meeting each of these statutory requirements is mandatory. *United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021). In so holding, *Palomar-Santiago* overruled a long line of Ninth Circuit cases concluding that where one statutory requirement was met, the alien was automatically excused from demonstrating the other two. Here, Valdivias fails to show that he met *any* of the statutory requirements in § 1326(d). In holding otherwise, the majority misreads the applicable immigration laws and revives these now-discredited Ninth Circuit cases.

## I

Valdivias first entered the United States illegally in 1999. By 2009, he had been convicted of multiple offenses, including driving under the influence with injury in July 2002, hit and run with property damage in February 2004, and driving under the influence in March 2007. In 2002, Valdivias was attacked by an unknown assailant in East Palo Alto, California and suffered skull fractures and lacerations. The East Palo Alto Police Department sent an officer to interview Valdivias while he was being treated in the emergency room. Valdivias told the police he did not know his attacker.

In February 2009, Valdivias was placed in removal proceedings and granted voluntary departure from the United States.   But in September 2009, he again illegally entered the United States.   In 2011, Valdivias pleaded no contest to the felony conviction of conspiring to cultivate marijuana in violation of state law.[1]

While serving a sentence of 16 months' imprisonment for the marijuana conspiracy conviction, Valdivias was served with a Notice to Appear in removal proceedings.   In January 2012, Valdivias appeared before an IJ.   At the hearing, Valdivias confirmed that he understood why he was participating in the proceeding.   Through a translator, the IJ informed Valdivias in English that

> At this and every hearing, gentlemen, you can have an attorney, but the government will not pay for your attorney.   So if you want an attorney, you must find one for yourself at no expense to the government.   To help you find an attorney should you want one, you have each been given a list of local legal services. The people on that list have told the court that they will take cases for free or at low cost.   If you haven't had time to consult with one of those services, or some attorney or service,

---

[1] In 2016, this offense was reclassified as a misdemeanor.   The IJ's determination that Valdivias's offense was an aggravated felony was correct at the time of the 2012 removal hearing, and Valdivias does not allege that the IJ erred due to this later change in the law.   *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1017 (9th Cir. 2013) (explaining that an IJ must provide "accurate information regarding an alien's eligibility for relief 'under the applicable law at the time of his deportation hearing'").

> then I'll postpone your case if you want me
> to. You are not required to have any attorney.
> You have the right to represent yourself.

A Spanish interpreter translated these statements into Spanish for Valdivias. For purposes of bringing a collateral challenge to his removal in district court, Valdivias's counsel subsequently hired a second interpreter to translate the Spanish interpretation provided at the removal proceeding into English.[2]

Assuming that Valdivias's interpretation of the Spanish translation into English is correct, the interpreter stated:

> Uh, in this proceeding and any other one that
> you have with immigration, you can hire an
> attorney. The government does not pay for
> the service of an attorney. Each one who,
> then, wants to hire an attorney goes and hires

---

[2] It is questionable whether a court can consider dueling interpretations in this context. Interpreters in immigration proceedings must meet certain proficiency standards and swear to translate accurately. *See* Dep't of Just., *Immigration Court Practice Manual* § 4.11 (updated June 20, 2023) https://www.justice.gov/eoir/book/file/1528921/dl; *see also* Dep't of Just, EOIR Language Access Plan, https://www.justice.gov/sites/default/files/eoir/legacy/2012/05/31/EOIRLanguageAccessPlan.pdf (providing that interpreters must have at least a year of experience translating in judicial settings and must pass an exam). Assuming both the interpreter in Valdivias's removal proceedings and Valdivias's interpreter hired for the collateral challenge were required to meet these standards, a district court does not have the requisite expertise to evaluate which interpretation is more correct. For instance, the phrase "retain a pro bono attorney" may be translated into Spanish as "contrate a un pro bono abogado," using a form of the verb "contratar," which Valdivias's interpreter translated as "to hire." The government, however, does not raise this issue.

one at his own expense. And so for that reason, to each one who would like to look for an attorney to hire one, a list of local legal services has been provided. When the people signed up on the list, those attorneys indicate to the judge that they can do cases free of charge and others for a low fee. So if anyone would like to hire an attorney, go look for a legal service to help you, I'll make your case for another day if you like. Even though it's not mandatory, everyone here has the right and you can, does not have to have an attorney, you can represent yourselves.

The IJ then engaged Valdivias in the following colloquy:

IJ: Mr., uh, Valdivias-Soto, do you understand your right to be represented?

Valdivias: Yes.

IJ: Do you have an attorney?

Valdivias: No.

IJ: Did you get the list of legal services?

Valdivias: Yes.

IJ: Do you want more time to try to get an attorney?

Valdivias: No.

IJ: Do you want time to talk to your consular officer?

Valdivias: No.

> IJ: Do you give up the right to be represented?
>
> Valdivias: Yes.
>
> IJ: Are you ready to represent yourself here today?
>
> Valdivias: Yes.

The IJ explained the role of an attorney in the proceedings. He then said:

> If you have no attorney, then you must act as your own attorney, and then you would have the right to cross-examine witnesses against you, and to examine and object to any of the government's evidence. You would have the right to present your own evidence. You have the right to present evidence in your favor . . . so you can call witnesses . . . you can show me anything you believe is important . . . and anything you think is important, you can mention it . . . and you can testify and tell me your story in your own words.

The IJ said "Mr. Valdivias-Soto, do you understand those rights?" Valdivias answered "Yes."

Next, the IJ discussed the right to an appeal. The IJ said:

> Lastly, then, gentlemen, you should know that if you disagree with the decision that I make in your case, you do not have to accept my decision. You can instead, appeal, and continue to fight your case before the Board

of Immigration Appeals. By your appeal, you
ask the Board of Immigration Appeals to
review what I've done, and to determine if
I've made a mistake or been unfair to you. If
you appeal, then my decision is not final. So
you would not be removed or deported unless
the Board of Appeals orders you removed.
You can have an attorney assist you on the
appeal, even if you have no attorney in
Immigration Court. But the government will
not pay for that attorney. And if you are
eligible for bond, then you can be free on
bond when you've passed immigration, uh,
custody. Your right to appeal is explained on
the paper which is attached to the list of legal
services.

According to Valdivias's interpreter, the Spanish language
interpreter at the proceeding interpreted the IJ's remarks as
follows:

And, lastly, when I tell you the decision, [if]
you don't like it, you do not have to accept it.
You can make the appeal, of the Board of
Appeals, for them to decide. So you ask the
Board of Appeals to determine if he did
something unfair. When a person makes an
appeal, he is not removed by expulsion or
deportation, uh, if he makes an appeal. And
so in the appeal process, [if] you need an
attorney to help, you, you can hire one. Then
when you are transferred from custody to
Immigration, the one who qualifies to be free
on bond and is appealing can be free on bond.

> Together with the list of legal services, a
> sheet of paper in the back, the right on how to
> be able to appeal is in writing.

The IJ asked: "Mr. Valdivias-Soto, do you understand your right to appeal?"  Valdivias answered "Yes."  The IJ asked if Valdivias had received the written explanation, and Valdivias said "Yes."

Next, the IJ explained the government's charge that Valdivias was removable because he entered into the country illegally and was convicted of conspiracy to cultivate marijuana.  Valdivias confirmed he understood these charges.  The IJ asked him again: "Do you want more time to get an attorney?" Valdivias said "No."

The IJ then confirmed that Valdivias had entered the country illegally, that he had been convicted of conspiracy to cultivate marijuana, and that he had no fear of returning to Mexico.  Based on Valdivias's admissions, the IJ determined that Valdivias was removable as charged, and had been convicted of a drug trafficking offense, which was categorically an aggravated felony.  Valdivias therefore was "ineligible for any relief or remedy."[3]

---

[3] Valdivias would later argue that he was eligible for a U-visa, which is a "form of relief available to victims of certain qualifying crimes who have suffered mental or physical abuse and assist in the prosecution or investigation of the crime" in addition to meeting other requirements. *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 759 (9th Cir. 2015). It is questionable whether Valdivias would qualify for this relief, *see* 8 C.F.R. § 214.14(b) (setting out eligibility criteria for obtaining a U-visa, including showing that the alien was helpful to the investigation or prosecution of the criminal activity).  In any event, the IJ's failure to advise Valdivias of this form of relief does not violate any regulation.

The IJ then explained "I must order you removed.  But you can appeal.  Do you want to appeal?"  Valdivias asked "If I appeal, I get released same date, or no?"  The IJ said "Well . . . you'll be released from prison . . . you'll go into the custody of the immigration authorities . . . You understand?"  Valdivias said "In that case, I wish not to appeal."  The IJ said "Are you sure?"  Valdivias said "Yes." The IJ said "You understand that if you do not appeal now, you can never appeal in the future?"  Valdivias said "Yes."

After Valdivias confirmed he understood that if he again illegally reentered the United States he would face up to 20 years in prison, the IJ said to him: "Do you understand that if you do appeal, the Board of Appeals could order that you go free and that you not be removed at all?" Valdivias replied "Well, like, I don't have any chance there, uh, from what I'm hearing."   The IJ said "You have to make your own assessments . . . about your opportunities.  I've told you your rights . . . Now that you know these rights . . . and the consequences . . . do you want to appeal?"  Valdivias said "No."

The IJ issued a removal order that stated: "Agg felon ineligible for relief."  Valdivias was deported in February 2012.

Some time after, Valdivias again entered the United States illegally, and was discovered in Monterey County by law enforcement in February 2015.  Valdivias was charged in a single count indictment under 8 U.S.C. § 1326(a) for illegally reentering the United States after being deported. In district court, Valdivias moved to dismiss his indictment

---

*See Zamorano v. Garland,* 2 F.4th 1213, 1224 (9th Cir. 2021); *see* Maj. op. at 18 n.8 (conceding this point).

by collaterally attacking his removal order. The district court granted the motion.

## II

In affirming the district court, the majority makes a key error on the threshold of its analysis: it holds that the IJ's statement that Valdivias could "hire" an attorney made Valdivias's waiver of the right to counsel and right to appeal invalid, and rendered the proceedings fundamentally unfair for purposes of § 1326(d)(3). This conclusion is belied by the record and is inconsistent with immigration law.

Contrary to the majority, Valdivias's due process rights were not violated here due to an error in interpretation, because the IJ met his obligation to advise on the limited right to counsel in immigration proceedings. There are two applicable requirements. First, "the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(a)(4)(A). To inform the alien of this right, the applicable regulations require the IJ to "[a]dvise the respondent of his . . . right to representation, at no expense to the government, by counsel of his or her own choice . . . ." 8 C.F.R. § 1240.10(a)(1); *see also* 8 C.F.R. § 1003.16(b). A second statute requires the IJ to provide the alien with a "list[] . . . of persons who have indicated their availability to represent pro bono aliens" in deportation proceedings. 8 U.S.C. § 1229(b)(2); *see also* 8 C.F.R. § 1240.10(a)(2) (requiring the IJ to "[a]dvise the respondent of the availability of pro bono legal services for the immigration court location at which the hearing will take place").

The IJ fulfilled both of these requirements. Even taking Valdivias's interpreter's translation as the correct one, the IJ

said: "[I]n this proceeding and any other one that you have with immigration, you can hire an attorney. The government does not pay for the service of the attorney. Each one who, then, wants to hire an attorney goes and hires one at his own expense." This language was adequate to inform Valdivias of the right to counsel at no expense to the government.

Second, the IJ said, "[T]o each one who would like to look for an attorney to hire one, a list of local legal services has been provided. When the people signed up on the list, those attorneys indicate to the judge that they can do cases free of charge and others for a low fee." There is no dispute that Valdivias received the list of local legal services providing pro bono assistance and was told there were lawyers who could "do cases free of charge."

The majority contends that Valdivias's waiver of his right to counsel was invalid because the word "hire" means "Valdivias could enjoy the privilege of being represented only if he could pay for an attorney." Maj. op at 14, 16. Because of this misinterpretation, the majority claims, Valdivias was not informed of his "right to be represented by a pro bono attorney if he could locate one." Maj. op. at 14. This conclusion is wrong on two counts. First, Valdivias was fully informed of the availability of pro bono counsel. Immediately after stating that an alien could retain an attorney, the interpreter explained that if an alien "would like to look for an attorney to hire one, a list of local legal services has been provided" which include attorneys that "can do cases free of charge." But more important, the majority misapprehends the statutory scheme. The statute and regulations give Valdivias the right only to retain counsel at no expense to the government. They do not give Valdivias the right to pro bono representation. Unlike in a criminal prosecution, the "Sixth Amendment does not afford

a right to the assistance of counsel in immigration proceedings." *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018). Rather, "[t]he right to be represented by counsel *at one's own expense* is protected as an incident of the right to a fair hearing under the . . . Fifth Amendment." *Id.* (emphasis added); *see also Usubakunov v. Garland*, 16 F.4th 1299, 1303 (9th Cir. 2021) ("[N]oncitizens have the right to counsel in removal proceedings, albeit not the right to counsel paid for by the government."). Of course, an alien in immigration proceedings can exercise the right to be represented "at no expense to the government" by retaining a pro bono attorney, if one is available.[4] But this is the same as saying that an alien can exercise the right to be represented "at no expense to the government" by paying for an attorney with donated funds, if any are donated. Valdivias has no more right to pro bono representation than he has a right to donated funds. The only right relating to pro bono counsel that Valdivias has under the regulations is the right to receive a list of pro bono counsel, which he received.

Contrary to the majority, the IJ discharged the two requirements for Valdivias's waiver of the right to counsel to be valid: the IJ "inquire[d] specifically as to whether [Valdivias] wishes to continue without a lawyer;" and he "receive[d] a knowing and voluntary affirmative response" that Valdivias gave up the right to be represented. *Tawadrus*

---

[4] In fact the supply of pro bono immigration counsel may fall well short of demand. *Despite Efforts to Provide Pro Bono Representation, Growth Is Failing To Meet Exploding Demands*, TRAC Immigration (May 12, 2023), https://trac.syr.edu/reports/716/https://trac.syr.edu/reports/716/ (last visited July 2, 2024); *Too Few Immigration Attorneys: Average Representation Rates Fall from 65% To 30%*, TRAC Immigration (Jan. 24, 2024), https://trac.syr.edu/reports/736/.

*v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). In an individual colloquy with the IJ, Valdivias affirmed that he knew he had the "right to be represented," that he had received the "list of legal services," that he did not "want more time to try to get an attorney," and that he had decided to "give up the right to be represented." Indeed, Valdivias twice declined to obtain an attorney, even though the IJ offered him more time to retain one. Therefore, the government has shown by clear and convincing evidence that Valdivias validly waived his right to be represented by counsel. Valdivias therefore cannot show that his removal proceeding was fundamentally unfair under § 1326(d)(3) on this basis. *See United States v. Rivera-Valdes*, 105 F.4th 1118, 1122 (9th Cir. 2024) (holding that the alien failed to show fundamental unfairness where "the government followed its statutory obligations" by "reasonably attempt[ing] to inform him of the [deportation] hearing" and thus that there was no due process violation).

The majority's conclusion that Valdivias invalidly waived his right to an appeal fails for the same reason. According to the majority, without having an attorney during the immigration proceedings, Valdivias was denied "the opportunity to have an attorney advise him about the potential benefits of appealing." Maj. op. at 25. The majority also claims that given Valdivias's inability to speak English, his illiteracy, and his history of traumatic brain injuries, the interpreter's statement that "[if] you need an attorney to help, you, you can hire one," prevented Valdivias from understanding that he could be represented by a pro bono attorney on appeal.

Again, this is belied by the record, which shows that the IJ satisfied the requirements for a valid waiver of the right to appeal because he "adequately conveyed both [Valdivias's]

appeal options and the finality associated with waiving appeal." *See United States v. Valdivia-Flores*, 876 F.3d 1201, 1206 (9th Cir. 2017). The IJ provided a full explanation of Valdivias's appeal right and stated that the right to appeal "is explained on the paper which is attached to the list of legal services," which included lawyers who would provide free legal services. Valdivias confirmed he understood his right to appeal and had received the written explanation of his appeal rights. According to Valdivias, his decision to waive his right to appeal was motivated by his desire to avoid being held in custody by immigration authorities; he did not mention the cost of hiring an attorney. Even after Valdivias waived his right to appeal, the IJ reviewed the benefits of appeal with Valdivias, but Valdivias again stated he did not want to appeal. Further, the IJ informed Valdivias of the finality of his decision, stating "You understand that if you do not appeal now, you can never appeal in the future?" Valdivias stated he understood, and reiterated he did not want to appeal. Therefore, the government has shown by clear and convincing evidence that Valdivias validly waived his right to appeal.

In short, Valdivias was informed about the right to counsel at no expense to the government, informed about lawyers who provided pro bono legal services, and informed about his appeal rights. Despite multiple opportunities, he waived his right to be represented by counsel and his right to appeal. On this record, there is no basis for holding that his removal proceeding was fundamentally unfair under § 1326(d)(3).

## III

Not only did the majority err in holding that Valdivias failed to meet the requirements of § 1326(d)(3), but the

majority doubles down on the error—and ignores Supreme Court precedent—by holding that due to this purported error, Valdivias is excused from showing he met the requirements of § 1326(d)(1) and (2). According to the majority, Valdivias was not required to exhaust administrative remedies because the IJ's purported error in advising him about the right to counsel rendered administrative review of his removal order unavailable. Maj. op. at 31–32. And because this error led to Valdivias's failure to make a valid waiver of his right to appeal to the BIA, the majority claims, the obligation to obtain judicial review of the deportation proceeding was also satisfied. In other words, because of the alleged interpretation error in the removal proceedings, the majority concludes that Valdivias has satisfied § 1326(d)(1) and (d)(2).

The majority's reasoning revives a line of cases that has been soundly rejected by the Supreme Court. Before *Palomar-Santiago* was decided, the Ninth Circuit had long held "that defendants are 'excused from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *Palomar-Santiago*, 593 U.S. at 326 (alteration in original) (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)). In a related line of cases, the Ninth Circuit held that § 1326(d)(1) and (d)(2) were satisfied where an IJ failed to inform the alien of the right to appeal, or failed to inform the alien about the availability of certain forms of relief, or where the alien's waiver was otherwise invalid. *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013).

Both these lines of cases were overturned by the Supreme Court as "incompatible with the text of § 1326(d)," *Palomar-Santiago*, 593 U.S. at 326, because "each of the statutory requirements of § 1326(d) is mandatory," *id.* at

329. The Court rejected the Ninth Circuit's theory that when an IJ misinforms an alien that a prior conviction makes the alien ineligible for relief, "administrative review is not practically 'available' under § 1326(d)(1)" because the alien "cannot be expected to know that the immigration judge might be wrong," and "will not recognize a substantive basis for appeal to the BIA." *Id.* at 327. The Court instead concluded that "[t]he immigration judge's error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error." *Id.* at 328. In reaching this conclusion, the Court "expressly rejected the argument that § 1326(d)'s requirements apply differently to substantive errors than to procedural ones: as the Court explained, both types of objections are 'challenge[s]' to such [removal] orders and are therefore governed by the limitations of § 1326(d)." *United States v. Portillo-Gonzalez*, 80 F.4th 910, 919 (9th Cir. 2023) (citation omitted).

We subsequently held that *Palomar Santiago* also overruled the Ninth Circuit cases holding that certain IJ errors, such as failing to explain an appeal right or giving erroneous advice to an alien regarding eligibility for a form of relief "effectively satisfies" the requirements of § 1326(d)(1) and (d)(2). *Id.* at 917, 919. Even assuming that the IJ's incorrect statement about the alien's eligibility rendered his removal proceedings fundamentally unfair, "that would not automatically or 'effectively' satisfy § 1326(d)'s other two requirements." *Id.* at 917. Rather, further administrative review was available because it could fix the "very error" committed by the IJ. *Id.* at 918.

The majority now revives this discredited precedent. As in those overruled cases, the majority focuses on an error in

the removal proceedings—here, the use of the word "hire" in the interpreter's explanation of the right to counsel and right to appeal—and concludes that this error excuses Valdivias from exhausting his administrative remedies. Relying on *Ross v. Blake*, 578 U.S. 632, 633 (2016), the majority concludes that the IJ's misrepresentation "thwarted" Valdivias from appealing his removal order to the BIA and thus made that remedy "unavailable." Therefore, the majority reasons, he was also prevented from obtaining judicial review, satisfying § 1326(d)(1) and § 1326(d)(2).

But *Palomar-Santiago* has swept away such reasoning. The majority's claim that the alleged mistranslation made administrative remedies unavailable does not withstand the slightest scrutiny. As we explained in *Portillo-Gonzalez*, under *Ross*, administrative remedies are unavailable only when a remedy, "although officially on the books," is made unworkable or unusable due to obstacles put in place by the government. 80 F.4th at 919 (quoting *Palomar-Santiago*, 593 U.S. at 328). This type of unavailability occurs, for instance, where the remedy "operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; where "the administrative scheme is so opaque that no ordinary prisoner can discern or navigate it"; or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 920 (quotation marks omitted) (quoting *Ross*, 578 U.S. at 643– 44).

Here, there was no obstacle rendering an appeal to the BIA unavailable. Contrary to the majority, the IJ did not engage in the sort of "machination, misrepresentation, or intimidation" that would prevent Valdivias from taking an

appeal. *Id.* (quoting *Ross*, 578 U.S. at 644). Nor did the IJ give Valdivias a "hide-and-seek" approach or otherwise mislead Valdivias "as to the existence or rules of the grievance process." *Id.* (emphasis omitted) (quoting *Ross*, 578 U.S. at 644 n.3). Nothing the IJ or the interpreter said involved "misleading statements as to the procedural steps for pursuing administrative remedies," as the majority contends. *Id.* at 920 (emphasis omitted); Maj. op. at 32. To the contrary, the IJ repeatedly told Valdivias he could appeal if Valdivias thought that the IJ had treated him unfairly.

Not even the inability to retain a lawyer would make the administrative appeal remedy unavailable. The majority mistakenly assumes that a pro se appeal would mean that an appeal is not available to Valdivias. Maj. op. at 32. But Valdivias could have represented himself in an appeal to the BIA. *See* Dep't of Just., *Immigration Court Practice Manual* § 2.2 (updated Nov. 7, 2023), https://www.justice.gov/eoir/book/file/1528921/dl ("An individual in proceedings may represent themselves before the Board."). While retaining a lawyer may be helpful in navigating the appeals process, it is not itself a procedural requirement in filing an appeal with the BIA. Because there was no misstatement as to the procedural steps for appealing to the BIA or any suggestion by the IJ that such an avenue did not exist "this case does not fall within any of the categories that *Ross* describes." *Portillo-Gonzalez*, 80 F.4th at 920.

Instead, the administrative remedy of an appeal to the BIA was "capable of use" and was available to Valdivias. *Id.* And as in *Palomar-Santiago*, further administrative review could have fixed the "very error" committed by the IJ. 593 U.S. at 328. Had Valdivias appealed pro se, the BIA could have determined that Valdivias's waiver of his right to

counsel was invalid, and then remanded the case to the IJ, giving Valdivias the opportunity to retain counsel for further proceedings.  Thus the IJ's error, if any, does not excuse Valdivias's "failure to comply with a mandatory exhaustion requirement."  *Id.*  And had Valdivias exhausted his appeal to the BIA, he could then have petitioned the Ninth Circuit for review, fulfilling both § 1326(d)(1) and § 1326(d)(2).

Because the IJ's error did not make administrative remedies unavailable to Valdivias, the majority's analysis devolves into the sort of reasoning we saw in our pre-*Palomar-Santiago* cases.  Just as in our overruled precedent, the majority opinion rests on a single purported error by the IJ:  the alleged mistranslation that an alien can "hire" an attorney.  And just as our overruled cases held that an IJ's error satisfied all three requirements of § 1326(d), the majority holds that the single purported mistranslation error here: (1) invalidates Valdivias's waiver of his right to counsel and right to appeal (satisfying the requirements of § 1326(d)(3)); (2) thwarts Valdivias's ability to take an appeal (satisfying the requirements of § 1326(d)(1)); and (3) therefore deprives Valdivias of the right to judicial review (satisfying the requirements of § 1326(d)(2)).  This reasoning cannot survive *Palomar-Santiago*, which held that "each of the statutory requirements of § 1326(d) is mandatory" and that a court may not sidestep the requirement that the alien demonstrate exhaustion of administrative remedies.[5]  593 U.S. at 329.

---

[5] The majority relies on *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), to argue that a consequential error by an IJ can satisfy all three requirements of § 1326(d).  Maj. op. at 34 n.16.  But here there was no such consequential error.  Rather, the majority points only to an

*\*\*\**

In light of *Palomar Santiago*, Valdivias failed to meet any of the three requirements in § 1326(d) that are necessary for bringing a collateral challenge to his removal proceedings. Despite any mistranslation in the removal proceedings, Valdivias received the required information about his right to a lawyer at no expense to the government and the availability of pro bono counsel. The proceeding was therefore not fundamentally unfair. Nor did any mistranslation error relieve him of the obligation to exhaust his administrative remedies by bringing an appeal to the BIA, which would then give him the ability to obtain judicial review. Because the majority effectively excuses Valdivias from meeting any of the mandatory requirements for bringing a collateral challenge to a removal order, I dissent.

---

interpreter's purported error in explaining the right to counsel, and claims this error satisfies all three of § 1326(d)'s requirements. Such a result is clearly contrary to *Palomar-Santiago*. Nor does *Mendoza-Lopez* stand for the proposition that a single error in an immigration proceeding can preclude the government from relying on the results of the proceeding in a criminal case. Rather, *Mendoza-Lopez assumed* (at the government's request) that the deportation hearing at issue in that case was fundamentally unfair, 481 U.S. at 839 (which would correspond to § 1326(d)(3)), and then separately determined that the aliens were deprived of judicial review of the deportation proceedings.