**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JORGE DE LA MORA-COBIAN,
*Defendant-Appellant.*

No. 20-30187

D.C. No.
4:19-cr-06024-SMJ

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Salvador Mendoza, Jr., District Judge, Presiding

Submitted November 8, 2021*
Seattle, Washington

Filed November 29, 2021

Before: Ronald M. Gould, Richard C. Tallman, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Tallman

---

* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal

The panel affirmed the district court's order denying the defendant's motion to dismiss his indictment for illegal reentry under 8 U.S.C. § 1326 on the basis that he was precluded from collaterally attacking the underlying order of removal.

The panel held under the statutory framework enacted by Congress that an alien who raises a claim for asylum during expedited removal proceedings is provided with an administrative remedy that must be exhausted before that order of removal can be collaterally challenged in a subsequent criminal prosecution for reentering the United States. The panel held that the facts support the district court's ruling that the defendant made a considered and intelligent decision to waive his right to appeal an asylum officer's negative credible fear finding. The panel concluded that because the defendant validly waived his right to appeal, he is precluded from collaterally attacking the expedited order of removal as a result of his failure to exhaust his administrative remedies at the time.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Paul E. Shelton Jr., Federal Defenders of Eastern Washington & Idaho, Yakima, Washington, for Defendant-Appellant.

Joseph H. Harrington, Acting United States Attorney; Richard C. Burson, Assistant United States Attorney; United States Attorney's Office, Yakima, Washington; for Plaintiff-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

Jorge De La Mora-Cobian appeals from the district court's order denying his motion to dismiss his indictment for illegal reentry under 8 U.S.C. § 1326 on the basis that he was precluded from collaterally attacking the underlying order of removal. We hold under the statutory framework enacted by Congress that an alien who raises a claim for asylum during expedited removal proceedings is provided with an administrative remedy that must be exhausted before that order of removal can be collaterally challenged in a subsequent criminal prosecution for reentering the United States.

I

A

Jorge De La Mora-Cobian testified at the hearing in support of his motion to dismiss his indictment that he first entered our country in 1999, crossing the Mexican border at age eighteen. He lived in the United States until 2004, when

immigration authorities permitted him to voluntarily return to Mexico after he was convicted of driving under the influence and an ignition interlock violation.

De La Mora-Cobian did not return to the United States again for more than a decade. On July 17, 2016, De La Mora-Cobian, with his wife and three children, presented himself at the San Ysidro, California, port of entry to seek asylum. Upon arrival, De La Mora-Cobian was detained and separated from his family. The next day, immigration authorities provided De La Mora-Cobian with a Notice of Expedited Removal.

A Border Patrol agent conducted an interview of De La Mora-Cobian in connection with the expedited removal proceedings and read Form I-867A to De La Mora-Cobian in Spanish. Form I-867A advised De La Mora-Cobian that he did not appear to be admissible to the United States, that he may be denied admission and immediately returned to his home country without a hearing, and that he may be barred from reentry for a period of five years or longer if removed. De La Mora-Cobian gave a sworn statement to the agent and made a request for asylum.

Upon De La Mora-Cobian's request for asylum, immigration authorities provided him with English and Spanish copies of Form M-444, which explains the credible fear interview process, the detention protocols for an asylum applicant, the rights of an asylum applicant, and the consequences of removal. De La Mora-Cobian signed both versions of the form.

De La Mora-Cobian was then transferred to an Immigration and Customs Enforcement detention facility in Georgia. On August 10, 2016, an asylum officer conducted a credible fear interview by phone. During the credible fear

interview, De La Mora-Cobian explained that he sought asylum on the basis that he had been kidnapped for ransom in Mexico and was again being targeted for money. De La Mora-Cobian said that during his kidnapping, his captors—who he believes to be members of the Nueva Generación gang—cut off one of his fingers and sent it to his wife along with a demand for money. When De La Mora-Cobian was again approached for money in July of 2016, he and his family fled, arriving in the United States two days later. During the credible fear interview, De La Mora-Cobian acknowledged receiving and signing Form M-444.

Two days later, on August 12, 2016, an asylum officer formally found that De La Mora-Cobian had no credible fear of a threat based on a protected ground recognized under the Refugee Act. The asylum officer explained to De La Mora-Cobian that he was entitled to review of the adverse credible fear determination, but he declined to administratively appeal. De La Mora-Cobian testified before the district court that he had waived further administrative review because he heard from other detainees that review by a judge would take months to occur, and he did not want to remain in detention while he was unable to contact his family. The asylum officer's notes also indicate that De La Mora-Cobian "telephonically refused immigration Judge review of the decision."

B

Following the termination of the asylum process, the Department of Homeland Security entered an Order of Expedited Removal of De La Mora-Cobian on August 23, 2016. He was flown to Phoenix to meet with a Mexican consulate officer, then deported to Mexico by air.

De La Mora-Cobian subsequently returned to the border and attempted reentry through Calexico, California, on September 16 or 17, 2018.  He was immediately apprehended and voluntarily deported on September 18, 2018.

On April 22, 2019, De La Mora-Cobian was arrested by ICE when he was again found in the United States during a traffic stop in the Eastern District of Washington.  The United States then obtained an indictment based on the 2016 order of removal, charging De La Mora-Cobian with illegal reentry in violation of 8 U.S.C. § 1326.  De La Mora-Cobian moved to dismiss the indictment, arguing that 1) the predicate expedited removal order was entered in violation of his due process rights; and 2) even if he waived his right to appeal the asylum claim, his waiver of administrative remedies was not considered and intelligent.

The district court conducted an evidentiary hearing and denied De La Mora-Cobian's motion to dismiss the indictment on January 30, 2020, on the ground that De La Mora-Cobian voluntarily failed to appeal his asylum claim, and therefore was precluded from collaterally attacking the predicate expedited removal order because he had not exhausted his administrative remedies.  De La Mora-Cobian entered a conditional guilty plea that permitted him to appeal the denial of his motion to dismiss the indictment.  This timely appeal followed.  We have jurisdiction under 28 U.S.C. § 1291.  *See also* FED. R. CRIM. P. 11(a)(2).

II

We review *de novo* a motion to dismiss an indictment under 8 U.S.C. § 1326 on the basis of a claimed due process defect in the predicate deportation proceeding.  *See United States v. Flores*, 901 F.3d 1150, 1155 (9th Cir. 2018).  Mixed

questions of law and fact—here, the validity of the waiver of the right to appeal a credible fear determination—are also reviewed *de novo*, *see United States v. Ramos*, 623 F.3d 672, 679 (9th Cir. 2010), while the underlying facts are reviewed for clear error. *Flores*, 901 F.3d at 1155.

## III

This case turns on whether 8 U.S.C. § 1326 requires an alien who initiates an asylum claim during the course of expedited removal proceedings to exhaust that asylum claim before the alien can subsequently collaterally attack the expedited removal order in a prosecution for illegal reentry. We hold that it does. Because we uphold the district court's ruling that De La Mora-Cobian validly waived his right to appeal, he is precluded from collaterally attacking the expedited order of removal as a result of his failure to exhaust his administrative remedies at the time.

## A

Under 8 U.S.C. § 1326, it is unlawful for an alien to illegally reenter the United States after his expulsion from the country under an order of exclusion, deportation, or removal. The government bears the burden of proving that the defendant previously left the country under such a valid order as an element of the crime. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011) ("To convict an alien criminal defendant of illegal reentry under 8 U.S.C. § 1326, the government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered."). Section 1326

explicitly provides that expedited removal orders,[1] such as the one at issue here, can satisfy the required element of a valid order of removal supporting a prosecution for illegal reentry.  8 U.S.C. § 1326(b)(3).

To collaterally attack the validity of an order of exclusion, deportation, or removal underlying a criminal prosecution for violation of 8 U.S.C. § 1326, the statute requires an alien to establish three distinct elements:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014).  At issue here is the first element:  exhaustion.

---

[1] "Expedited removal proceedings involve, as the name suggests, a streamlined process through which certain non-citizens—such as those apprehended at or near the border soon after entry—may be removed from the United States without a hearing before an immigration judge." *Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1190 (9th Cir. 2021). Under current regulations, aliens "who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility" are subject to removal through expedited removal proceedings.  8 C.F.R. § 235.3(b)(1)(ii).

Exhaustion of administrative remedies requires an alien to raise and appeal before an agency the claims that the agency could consider to render relief against the challenged order at issue. *See Barron v. Ashcroft*, 358 F.3d 674, 677–78 (9th Cir. 2004). The doctrine stipulates that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (simplified). With the exception of "certain constitutional challenges that are not within the competence of administrative agencies to decide," failure to present a claim in administrative proceedings bars federal courts from passing on that claim. *Barron*, 358 F.3d at 678.

An expedited removal order can be challenged only in narrow circumstances. The Immigration and Nationality Act provision which authorizes expedited removal proceedings, 8 U.S.C. § 1225, permits an alien to directly challenge an expedited removal order by claiming "to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section 1157 of this title, or to have been granted asylum under section 1158 of this title." 8 U.S.C. § 1225(b)(1)(C). An alien cannot challenge the order on any other basis, and "a removal order entered in accordance with [the expedited removal provisions] is not subject to administrative appeal." *Id.*; *see also* 8 C.F.R. § 235.3(b)(2)(ii). Additionally, section 1225 limits judicial review of expedited removal orders in criminal prosecutions attacking the validity of an order of removal. *See* 8 U.S.C. § 1225(b)(1)(D); *Barajas-Alvarado*, 655 F.3d at 1086.

However, an alien placed in expedited removal proceedings is permitted to raise a defensive asylum claim, which can be administratively appealed if the alien so chooses. *See* 8 U.S.C. § 1225(b)(1)(A)(i) ("[T]he officer

shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." (emphasis added)).   When an asylum claim is raised, either by an alien or an immigration officer, expedited removal proceedings are held in abeyance until an asylum officer conducts a credible fear interview to determine whether the alien may be eligible for asylum. *See* 8 C.F.R. § 235.3(b)(4).   And in contrast to the other provisions of the expedited removal statute, 8 U.S.C. § 1225 carves out an explicit exception that permits aliens to seek rapid administrative review of their asylum claim. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III) ("The Attorney General shall provide by regulation and upon the alien's request for prompt review *by an immigration judge* of a determination under subclause (I) that the alien does not have a credible fear of persecution . . . ." (emphasis added)).

Interpreting this statutory scheme, we concluded in *Barajas-Alvarado* that:

> Congress authorized administrative review for expedited removal orders only in two narrow circumstances:  (1) if the alien claims under oath that he or she is a lawful permanent resident, was previously admitted as a refugee, or was previously granted asylum; or (2) if the alien claims a fear of persecution if returned to the alien's home country, and an immigration officer deems this fear to be not credible.

655 F.3d at 1081–82 (simplified).   The second of these circumstances applies here.  De La Mora-Cobian initiated an application for asylum, received a credible fear interview,

and had the opportunity to appeal the adverse credible fear determination to an immigration judge—an administrative remedy he failed to exhaust. While Congress has generally limited administrative challenge to expedited removal orders, *see* 8 U.S.C. § 1225(b)(1)(C), Congress did allow administrative review of the denial of an asylum claim as part of the expedited removal process, *see id.* § 1225(b)(1)(B)(iii)(III). De La Mora-Cobian chose to waive this administrative review of his asylum claim, and such a failure to exhaust the statutory remedy constitutes a bar to collateral review of the deportation order now.

### B

Because we hold that an alien who raises an asylum claim in the course of expedited removal proceedings is required to administratively exhaust that asylum claim before collaterally attacking the expedited removal order, we must also consider De La Mora-Cobian's contention that the waiver of his administrative appeal was not considered and intelligent. We affirm the district court's conclusion that De La Mora-Cobian's waiver of his right to appeal was valid.

"[A]n alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). As a corollary, an alien who did not validly waive his right to appeal is exempted from the exhaustion requirement. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1045 (9th Cir. 2012).

"The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings." *Ramos*, 623 F.3d at 680. A valid waiver must be considered and intelligent. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Moreover,

the government must prove by "clear and convincing evidence" that the alien received "adequate advisement of the consequences of his waiver of appeal." *Ramos*, 623 F.3d at 681. Courts look not just to the immigration documents, but to all the surrounding circumstances to determine the validity of a waiver. *See United States v. Valdivia-Flores*, 876 F.3d 1201, 1205 (9th Cir. 2017). The district court did so here.

The facts here support the trial court's ruling that De La Mora-Cobian made a considered and intelligent decision to waive his right to appeal the negative credible fear finding. An immigration officer read the contents of Form I-867A to De La Mora-Cobian in Spanish—his native language—which advised De La Mora-Cobian that he did not appear to be admissible to the United States, that he may be denied admission and immediately returned to his home country without a hearing, and that he may be barred from reentry for a period of five years or longer if removed. De La Mora-Cobian also signed two copies of Form M-444, printed both in English and in Spanish, describing the credible fear interview process, explaining his right to appeal, and including a warning that, if deported, he "may be barred from reentry to the United States for a period of 5 years or longer." While De La Mora-Cobian testified that he does not remember receiving the forms, he did acknowledge as authentic his signature on each.

Moreover, De La Mora-Cobian testified under oath that an asylum officer informed him of his right to appeal the negative credible fear finding to an IJ, and that he would be removed if he chose not to appeal the decision. The asylum officer's contemporaneous notes corroborate that De La Mora-Cobian "telephonically refused immigration Judge review of the decision." De La Mora-Cobian explained that

he made his decision not to appeal because he had heard he could be detained for months before he saw an IJ, he had already been separated from his family for a month, and he wanted to be reunited with them.  We endorse the district court's conclusion that, without diminishing the difficulty of such circumstances, as a matter of law they do not render the waiver of the appeal invalid.

Consequently, we **AFFIRM** the district court's denial of De La Mora-Cobian's motion to dismiss the indictment.