**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ELIEL NUNEZ SANCHEZ, AKA
Eliel Nunez,

*Defendant-Appellant*.

No.22-50072

D.C. No.
2:20-cr-00083-
RGK-1

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted January 13, 2025
Pasadena, California

Filed June 18, 2025

Before: Ronald M. Gould, Mark J. Bennett, and Kenneth
K. Lee, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's denial of Eliel Nunez Sanchez's motion to dismiss an indictment charging him with illegal reentry after removal in violation of 8 U.S.C. § 1326.

Pursuant to 8 U.S.C. § 1326(d), aliens presenting collateral attacks on removal orders must satisfy three requirements for such challenges to proceed: they must have exhausted all administrative remedies available to them (§ 1326(d)(1)); they must have been deprived of the opportunity for judicial review (§ 1326(d)(2)); and entry of the removal order must have been "fundamentally unfair" (§ 1326(d)(3)). Under *United States v. Palomar-Santiago*, 593 U.S. 321 (2021), all three requirements are mandatory.

The panel held that Nunez satisfied none of § 1326(d)'s three requirements.

Nunez argued that he exhausted all "available" administrative remedies under § 1326(d)(1) because due process errors in his 2010 deportation proceeding rendered his waiver of the right to appeal invalid and thus unavailable. The panel held that Nunez made no allegations that fall within the exceedingly narrow set of circumstances required under *United States v. Valdivias-Soto*, 112 F.4th 713 (9th Cir. 2024), to excuse a failure to exhaust—*i.e.*, an immigration judge's affirmative misrepresentation of the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

rights available to him. Nor does the record demonstrate that the IJ made any misrepresentations. Absent such misrepresentation, a waiver of appeal that was not considered and intelligent does not overcome § 1326(d)(1)'s exhaustion bar. In any event, the panel disagreed with Nunez that his waiver was not considered and intelligent.

Because Nunez's waiver of appeal was considered and intelligent, he was not deprived of the opportunity for judicial review under § 1326(d)(2).

As Nunez satisfied neither § 1326(d)(1) or (2), it would not matter here if he did satisfy § 1326(d)(3). But he did not. Nunez alleged that three due process violations rendered his removal proceedings fundamentally unfair: "[t]he immigration judge accepted an invalid waiver of appeal from Nunez"; "[t]he immigration judge did not obtain a valid waiver of counsel from Nunez"; and "[t]he immigration judge failed to properly advise Nunez about voluntary departure and to properly consider such relief." As discussed, Nunez's waiver of appeal was valid. His waiver of counsel was also valid because the record demonstrates it was knowing and voluntary. As to Nunez's third contention, Nunez could not have been prejudiced by any alleged failure to properly consider voluntary departure because it is not plausible that Nunez would have received voluntary departure.

Accordingly, Nunez's collateral attack on his removal order cannot proceed.

## COUNSEL

Laura A. Alexander (argued), Assistant United States Attorney, Environmental Crimes and Consumer Protection Section; Maxwell K. Coll and Rajesh R. Srinivasan, Assistant United States Attorneys; David R. Friedman, and Mack E. Jenkins, Assistant United States Attorneys, Chiefs, Criminal Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney; United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Holt O. Alden (argued) and James H. Locklin, Deputy Federal Public Defenders; Cuauhtémoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

## OPINION

BENNETT, Circuit Judge:

Defendant-Appellant Eliel Nunez Sanchez (Nunez)[1] collaterally attacks the validity of a removal order entered against him in 2010. Pursuant to 8 U.S.C. § 1326(d), aliens presenting collateral attacks on removal orders must satisfy three requirements for such challenges to proceed: first, they must have exhausted all administrative remedies available to them; second, they must have been deprived of the opportunity for judicial review; and finally, entry of the

---

[1] The opening and reply briefs refer to Defendant as "Nunez."

removal order must have been "fundamentally unfair." 8 U.S.C. § 1326(d).

Nunez satisfies none of § 1326(d)'s three mandatory requirements. Nunez failed to exhaust his administrative remedies, and his challenge falls outside the narrow zone of procedural defects excusing a failure to exhaust administrative remedies. *See id*. U.S.C. § 1326(d)(1). Nunez also fails to demonstrate that he was deprived of the opportunity for judicial review. *Id*. § 1326(d)(2). Finally, Nunez fails to demonstrate that the entry of the removal order against him was fundamentally unfair. *Id*. § 1326(d)(3). Because Nunez must satisfy each of § 1326(d)'s three requirements, but he satisfies none, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Factual background

Nunez, a citizen of Mexico born in 1986, illegally entered the United States as a child (brought by his parents) in the early 1990s. In 2006, Nunez was convicted of possession of a controlled substance (methamphetamine) while armed and was sentenced to nine months in jail. When arraigned in that 2006 case, Nunez was informed that a conviction would subject him to "the consequences of deportation, exclusion from admission to the United States, or denial of naturalization."

In July 2010, Nunez was arrested for possession of a controlled substance (methamphetamine) for sale. The U.S. Department of Homeland Security (DHS) then initiated removal proceedings against Nunez. Nunez was concurrently provided with a notice of his right to a hearing before an immigration judge (IJ). That notice stated, among

other things, that Nunez had the right to contact an attorney or legal representative to represent him at that hearing and that he could request a list of legal organizations that might provide free or low-cost representation.

On August 2, 2010, Nunez received a notice to appear in El Paso, Texas, for removal proceedings. That notice informed him that he would be provided with a list of qualified organizations and attorneys who might represent him at no cost; that the immigration judge conducting the proceeding would advise him of any relief from removal for which he was eligible (including voluntary departure); and that he would be given an opportunity to apply for such relief.

Nunez's removal proceeding took place before an IJ on August 30, 2010. Nunez did not obtain counsel before the removal proceeding. At the proceeding, Nunez was one of fourteen noncitizens addressed collectively. A Spanish-language interpreter contemporaneously translated the proceedings.[2]

The group was informed of their right to counsel. The group collectively confirmed that they had received a list of free legal service providers in the area. The IJ also informed the group of their right to appeal the IJ's eventual decision, as well as the procedures for conducting such an appeal. The IJ told the group that once a decision was made on their case, he would ask them if they wanted to appeal; that if they said "no," his decision would be final; and that if they said "yes," the decision would not be final.

---

[2] Nunez, who grew up in the United States, is fluent in English. When speaking with the IJ, Nunez requested to proceed in English.

The IJ informed the group that if any of them did not have a "clean police record," he would exercise his discretion in declining any requests for voluntary departure (relief that the IJ described as allowing those removed "to avoid some of the negative consequences of deportation"). The IJ then asked the group if they wanted more time to prepare their case or to seek representation, and to stand if so. Two members of the group stood. Nunez did not. The IJ then gave those two individuals one month to retain counsel and rescheduled their proceedings accordingly. He then once more asked the remaining noncitizens present if they wanted to seek representation, and if so, to stand up. Again, Nunez did not stand.

The IJ then individually spoke with each noncitizen present, including Nunez. When the IJ spoke with Nunez, Nunez confirmed he was a native and citizen of Mexico who had last entered the United States illegally. [3] Nunez sought voluntary departure, and the IJ denied that request based on Nunez's 2006 conviction for possession of a controlled substance while armed.[4] The IJ informed Nunez that he was going to order him deported to Mexico. The IJ asked Nunez if he wanted to appeal that decision, and Nunez said no. The IJ then ordered Nunez deported to Mexico (Removal Order). Nunez was deported to Mexico on September 1, 2010. Nunez did not appeal the Removal Order. Nunez also did not move to reopen.

---

[3] The transcript reads: "[IJ]: Did you last enter the United States illegally, by sneaking in?" "[Nunez]: Yes."

[4] The IJ asked Nunez what drug was involved, and Nunez said it was "meth."

Between 2010 and 2019, Nunez illegally reentered the United States eight times and was deported seven times.[5] Each of those removals was based on the Removal Order. In 2019, Nunez was again apprehended by immigration authorities in the United States.

## 2. Procedural background

In February 2020, a grand jury in the Central District of California charged Nunez with illegally reentering the United States after having previously been subject to an order of exclusion, deportation, or removal, in violation of 8 U.S.C. §§ 1326(a), (b)(1), and (b)(2). Nunez moved to dismiss the indictment on the ground that the Removal Order was invalid.

Nunez argued that he exhausted all "available" administrative remedies because due process errors in his 2010 deportation proceeding rendered his waiver of the right to appeal invalid and thus unavailable. He also argued that the supposedly invalid appeal waiver deprived him of the opportunity for judicial review. Nunez further argued that entry of the Removal Order was fundamentally unfair because his due process rights were violated at the 2010 removal proceeding. Nunez claimed that if not for the alleged due process violations, it was "at least 'plausible'" that he could have received voluntary departure.

---

[5] Nunez was convicted of felony possession of a controlled substance for sale following the July 2010 arrest and was sentenced to 36 months' probation and 12 days in jail. Nunez was also convicted of two felonies in 2012 related to the possession and distribution of dihydrocodeinone. Nunez was originally sentenced to 180 days in custody for those felonies but was resentenced to three years' imprisonment following a probation violation.

The district court denied Nunez's motion to dismiss, finding that Nunez had failed to exhaust his administrative remedies because he had validly waived his right to appeal the Removal Order, and thus his collateral attack on the Removal Order was barred. Nunez subsequently entered a conditional plea of guilty to violations of § 1326(a) and (b)(2), preserving his right to appeal the district court's denial of his motion to dismiss. The district court sentenced Nunez to 24 months in custody followed by three years of supervised release, and this timely appeal followed.

## II. JURISDICTION

We have jurisdiction under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

We review de novo the district court's denial of a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *See United States v. Portillo-Gonzalez*, 80 F.4th 910, 915 (9th Cir. 2022).

## IV. DISCUSSION

Nunez was charged with crimes that are applicable only to aliens who have been subject to "order[s] of exclusion, deportation, or removal." 8 U.S.C. § 1326(a)(1). We have held, however, that "a successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry." *United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010), *abrogated on other grounds as recognized in United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023). Thus, if Nunez's collateral challenge has merit, we must reverse the district court and grant his motion to dismiss the indictment. But Nunez's challenge lacks merit, so we affirm.

Section 1326(d) provides that an alien may not collaterally challenge the validity of a deportation order (like the Removal Order here), unless:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; *and*
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added).

## 1. Nunez fails to satisfy the exhaustion prong of § 1326(d)(1)

Nunez did not appeal the Removal Order or move to reopen. But Nunez argues that he did not fail to exhaust *available* administrative remedies because his waiver of appeal was invalid. As discussed below, we disagree and find the waiver valid. But even if Nunez were correct, the specific alleged defects identified by Nunez do not excuse any failure to exhaust administrative remedies.

Nunez claims that a limited set of procedural defects may excuse a failure to exhaust administrative remedies. Nunez relies on *United States v. Valdivias-Soto*, 112 F.4th 713 (9th Cir. 2024), in which we identified a highly limited set of circumstances in which a noncitizen's failure to exhaust administrative remedies may be excused. *Id*. at 732–33. But Nunez makes no allegations that fall within the exceedingly

narrow set of circumstances excusing a failure to exhaust under *Valdivias-Soto*.

Until 2021, this court held that defendants charged under § 1326 who had been ordered removed due to a criminal conviction were excused from proving the first two prongs of § 1326(d) if they had been removed as the result of a substantive legal error. *See, e.g.*, *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017) (per curiam) (forgiving a failure to exhaust if defendant "was not convicted of an offense that made him removable"). But in *United States v. Palomar-Santiago*, 593 U.S. 321 (2021), the Supreme Court overruled this approach, holding that courts may not excuse § 1326(d)(1)'s exhaustion requirement and that "*each* of the statutory requirements of §1326(d) is mandatory." *Id.* at 329 (emphasis added). We have read *Palomar-Santiago* as establishing that "[a] substantive error of immigration law 'does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error.'" *Portillo-Gonzalez*, 80 F.4th at 918 (quoting *Palomar-Santiago*, 593 U.S. at 328).

Nunez tries to evade *Palomar-Santiago* by arguing that he is not mounting a "substantive" challenge to the IJ's decision. Instead, he claims he is advancing a "procedural" challenge—that his waiver of appeal was invalid because of procedural defects that violated his due process rights. According to Nunez, the Supreme Court in *Palomar-Santiago* "didn't consider to what extent any particular procedural error might satisfy § 1326(d)(1)." Nunez further argues that certain procedural defects may render the exhaustion requirement inapplicable. The government counters that *Palomar-Santiago* is far more expansive, and that "[i]t is no longer enough to argue, as defendant does,

that a procedural error during removal proceedings excuses him from demonstrating administrative exhaustion or the deprivation of judicial review under §§ 1326(d)(1) and (2)."

Nunez is correct that under this court's caselaw, certain procedural defects may render administrative remedies unavailable such that a failure to exhaust them may be excused. In the wake of *Palomar-Santiago*, we initially understood that case as "not limit[ing] its holding to an IJ's substantive errors" and as "expressly reject[ing] the argument that § 1326(d)'s requirements apply differently to substantive errors than to procedural ones." *Portillo-Gonzalez*, 80 F.4th at 919. But in *Valdivias-Soto*, we held that a limited set of alleged procedural violations may render administrative remedies unavailable for the purposes of § 1326(d)(1)'s exhaustion requirement.[6] *See* 112 F.4th at 730–33.

In *Valdivias-Soto*, we looked to the Supreme Court's decision in *Ross v. Blake*, 578 U.S. 632 (2016), which held that in a limited set of circumstances, administrative remedies may be functionally unavailable such that they need not be exhausted to satisfy a statutory exhaustion requirement. *Valdivias-Soto*, 112 F.4th at 730 (citing *Ross*, 578 U.S. at 643–44). *Ross* established that administrative remedies may not actually be available for the purposes of exhaustion when (1) they are effectively a "dead end"; (2) the requisite procedures are "so opaque" that they are

---

[6] The government states in its answering brief: "The government maintains that *Valdivias-Soto* is inconsistent with *Palomar-Santiago* and *Portillo-Gonzalez* and reserves its right to seek further review of that decision or the application of it to this case." *Valdivias-Soto*, however, is binding on this three-judge panel. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

"incapable of use"; or (3) "administrators [have] thwart[ed] claimants] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643–44. As the *Ross* Court observed, "these circumstances will not often arise." *Id*. at 643. *Valdivias-Soto* established that *Ross*'s holding was specifically applicable to certain failures to exhaust administrative remedies under § 1326(d)(1). 112 F.4th at 730.

In *Valdivias-Soto*, we found that an IJ's misrepresentation regarding defendant's right to counsel (the result of a translation error) fell within *Ross*'s third category of impermissible circumstances excusing a failure to exhaust. *Id.* at 732–33. There, an "IJ's erroneous advice about [defendant]'s right to counsel was . . . not an 'error on the merits,' but a misstatement of the type described in *Ross* concerning the *procedural rules* for obtaining administrative remedies." *Id*. at 732. Given the IJ's affirmative misrepresentations, we held that defendant had not failed to exhaust available administrative remedies under § 1326(d)(1).[7] *Id.* at 732–33.

But *Valdivias-Soto* does not stand for the claim that any waiver of appeal that is not considered and intelligent excuses a failure to exhaust, nor that any alleged procedural defect may overcome § 1326(d)(1)'s bar on collateral attacks

---

[7] *Valdivias-Soto* also held that "an IJ's 'error on the merits' does not, on its own, prevent a defendant from entering a 'considered and intelligent' waiver of their right to appeal." 112 F.4th at 726–27. But there, the petitioner suffered from a neurocognitive disorder, could only speak Spanish, and could not read or write in any language. *Id*. at 718–20. Thus, because of the IJ's misrepresentations, the petitioner was not even aware of his right to counsel and therefore could not have validly waived that right. *Id*. at 732.

to removal orders. Rather, it stands for the far more limited proposition that "administrative remedies are not 'available'" for the purposes of § 1326(d)(1) only "if the IJ 'misled' the defendant 'as to the existence or rules of the . . . process' for obtaining them."**[8]** *Id*. at 732 (ellipsis in original) (quoting *Portillo-Gonzalez*, 80 F.4th at 920).

This very limited exception does not help Nunez. Unlike the aggrieved parties in both *Ross* and *Valdivias-Soto*, Nunez makes no allegations that the IJ made any affirmative misrepresentations about the rights available to him. *Cf. id.* at 732–33; *Ross*, 578 U.S. at 648. Nor does the record demonstrate that the IJ made any misrepresentations. Rather, Nunez claims that he overcomes § 1326(d)(1) because the record allegedly does not demonstrate that Nunez's right to appeal was considered and intelligent and that his waiver of appeal was thus invalid.

Nunez misunderstands *Valdivias-Soto*. The defendant in *Valdivias-Soto* did not overcome § 1326(d)(1)'s exhaustion bar solely because his waiver of appeal was not considered and intelligent. He overcame it because the IJ made an affirmative misrepresentation which, under *Ross*, excused his failure to exhaust. *Valdivias-Soto*, 112 F.4th at 732 ("[Defendant]'s case . . . falls squarely within the

---

[8] As noted, *Valdivias-Soto* also looked to two additional circumstances described in *Ross*: instances where administrative remedies may not actually be available for the purposes of exhaustion because (1) they are effectively a "dead end," or (2) the requisite procedures are "so opaque" that they are "incapable of use." 112 F.4th at 730 (citing *Ross*, 578 U.S. at 643–44). Nunez makes no argument here that appeal to the Board of Immigration Appeals (BIA) would have effectively been a dead end or that the BIA's appeal procedures are so opaque that they are incapable of use.

'misrepresentation' category described in *Ross*."); *see also Portillo-Gonzalez*, 80 F.4th at 920 (identifying *Ross* as requiring "a misleading statement about appeal rights or procedures" to excuse a failure to exhaust administrative remedies). And for the same reason, defendant's waiver of appeal was not considered and intelligent. *Valdivias-Soto*, 112 F.4th at 732. ("[T]he erroneous translations that resulted in [defendant's] invalid waiver of his right to counsel also denied him the assistance of counsel. . . .").

As discussed below, we disagree that Nunez's waiver was not considered and intelligent. But that disagreement is immaterial. Even if Nunez were correct, his claim cannot overcome *Palomar-Santiago* because Nunez makes no allegations within the exceedingly narrow set of circumstances in which a failure to exhaust may be excused pursuant to *Valdivias-Soto*.

Nunez claims that "[i]t matters not whether Nunez was inadequately informed due to incorrect information or insufficient information," because "the end result is the same," and that because the IJ accepted an allegedly invalid waiver of appeal, Nunez's appeal was "'incapable of use and thus unavailable' for purposes of § 1326(d)(1)." **(**quoting *Valvidias-Soto*, 112 F.4th at 732**)**. But this distinction is essential. *Ross* means what it says, highlighting three specific circumstances—all extreme examples—in which a litigant's failure to exhaust administrative remedies may be excused. *Valdivias-Soto* goes no further, simply finding that when a litigant is *actively misled* as to the rights available to him, such procedural error may excuse a failure to exhaust administrative remedies under § 1326(d)(1).

In *Valdivias-Soto*, we also expressly distinguished the facts before us from those in *Portillo-Gonzalez*, noting that

in the latter case "the IJ had 'informed [defendant] of his right to appeal' and '[t]here was no *misrepresentation* . . . as to the rules or procedural steps governing such appeals.'" 112 F.4th at 731 (alteration in original) (emphasis added) (quoting *Portillo-Gonzalez*, 80 F.4th at 920). Those facts are the exact facts before us—the IJ informed Nunez and all those present at his deportation proceeding of their right to appeal and, unlike the IJ in *Valdivias-Soto*, made no affirmative misrepresentations about that right. Thus, even if Nunez's waiver were not "considered and intelligent," that alone would not excuse Nunez's failure to exhaust administrative remedies pursuant to § 1326(d)(1).

## 2. Nunez was not deprived of the opportunity for judicial review under § 1326(d)(2)

Nunez argues that because his waiver of appeal was supposedly invalid, his deportation proceedings deprived him of the opportunity for judicial review. For a waiver of a BIA appeal to be valid, it must be considered and intelligent. *See id.* at 733. However, Nunez's waiver was considered and intelligent.

"The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," and must "prove by 'clear and convincing evidence' that the alien received 'adequate advisement of the consequences of his waiver of appeal.'" *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021) (quoting *United States v. Ramos*, 623 F.3d 672, 680–81 (9th Cir. 2010)).

Nunez argues that his waiver of the right to appeal was not "considered and intelligent" because, in his telling, his notice to appear and the IJ did not fully explain the nature of an appeal; because the IJ did not inform him of the

consequences of waiver; and because the IJ informed the group of noncitizens at Nunez's deportation hearing of their appellate rights *en masse*, when this court has held that "[m]ass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows," *United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993) (per curiam).

To Nunez's first point, the government did not preserve a document allegedly given to Nunez at his removal proceeding explaining his appeal rights and containing a list of free legal service providers. But the record shows that the IJ addressed the document in the hearing and went over it, receiving affirmations from the group that they both received and understood the document.[9] The record thus indicates that Nunez both received and understood that document. And as discussed below, the IJ twice described the nature of an appeal by explaining that it would mean an individual "do[esn]'t accept the decision."

---

[9] Nunez highlights the fact that his individual voice cannot be made out in the audio recording of the proceeding and that the transcript shows only the translator as affirmatively responding to the IJ's questions. The alleged inference is that Nunez (who was raised in the United States and is fluent in English) ignored or misunderstood the questions posed to him throughout the hearing, asked no questions, and that his supposed silence went unaddressed by the IJ, all of which made his alleged waiver of appeal invalid. This is simply speculation. Moreover, when directly addressed by the IJ regarding the prospect of appeal, Nunez showed no confusion or lack of understanding. Nunez also independently raised the possibility of filing for alternative relief in the form of an I-130 petition: "How about if my fiancé would apply for me? I mean, I put in a[n] I-130 petition." This further demonstrates Nunez's engagement and understanding during his deportation proceedings.

As to Nunez's second argument, that the IJ did not explain the consequences of any failure to appeal, the record demonstrates the opposite is true.  The IJ informed those noncitizens present:

> After I tell you what decision I've made in your case, I'm going to ask if you want to appeal. . . .  If you say "No," meaning you don't want to appeal, and that you accept the decision? It will be final on that day. . . .  If you say "Yes," meaning you do want to appeal, and that you don't accept the decision?  It will not be final on that day.

The IJ repeated this warning soon after.  The consequences of any failure to appeal were thus directly explained twice to Nunez.

Nunez also argues that his waiver of appeal was not considered or intelligent because his proceedings were conducted in part *en masse*, and this court has noted that "[m]ass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows."  *Id*. at 754.  But this case is readily distinguishable from *Lopez-Vasquez*.  In *Lopez-Vasquez*, the IJ never addressed potential deportees individually regarding their desire to waive their right to appeal.  *Id.* at 752–53.  Here, however, the IJ specifically asked Nunez, in an individual colloquy, if he wanted to appeal.  Nunez explicitly declined to do so.[10]

---

[10] The transcript reads: "[IJ]: Do you understand. I'm going to deny your request for voluntary departure, and instead order you deported to Mexico.  Do you want to appeal that decision?"  "[Nunez]: No."

In sum, the record shows that the IJ informed Nunez of his right to appeal and the nature of an appeal, explained the consequences of any failure to appeal, and provided Nunez with an individual opportunity to appeal (which Nunez declined).  For these reasons, the government has shown by "clear and convincing evidence" that Nunez's waiver of his right to appeal was considered and intelligent.  *De La Mora-Cobian*, 18 F.4th at 1148 (quoting *Ramos*, 623 F.3d at 681).

### 3.  Entry of the Removal Order was not unfair under § 1326(d)(3)

The third prong of § 1326(d) asks whether entry of the challenged deportation order was "fundamentally unfair." 8 U.S.C. § 1326(d)(3).  As Nunez has not satisfied either § 1326(d)(1) or (2), it would not matter here if he did satisfy § 1326(d)(3).  But he does not.

As our sister circuits have correctly held, "[w]hen Congress used the phrase 'fundamentally unfair' in § 1326(d)(3), it meant that aliens must show that they have been denied due process under the Fifth Amendment." *United States v. Castillo-Martinez*, 16 F.4th 906, 922 (1st Cir. 2021) (citing *United States v. Torres*, 383 F.3d 92, 103 (3d Cir. 2004) (collecting cases and noting that "[i]n measuring whether an alien's removal proceeding was 'fundamentally unfair,' most circuits ask whether the alien was denied due process")).  And a due process violation alone does not mean that the entry of a removal order was "fundamentally unfair": "we must still consider whether such error resulted in prejudice."  *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011).

Nunez alleges three due process violations rendered his removal proceedings fundamentally unfair: "[t]he immigration judge accepted an invalid waiver of appeal from

Nunez"; "[t]he immigration judge did not obtain a valid waiver of counsel from Nunez"; and "[t]he immigration judge failed to properly advise Nunez about voluntary departure and to properly consider such relief."   As discussed, Nunez's waiver of appeal was valid.  For the reasons below, his waiver of counsel was also valid.  And as to Nunez's third contention, Nunez could not have been prejudiced by any alleged failure to properly consider voluntary departure because it is not plausible that Nunez would have received voluntary departure.

### a.  Nunez's waiver of his right to counsel was valid

Nunez alleges that his due process right to counsel was violated because he did not validly waive it.  But the record demonstrates that Nunez received several notices informing him of his right to counsel, both before and during his removal proceeding.   The record also includes an immigration officer's certification that Nunez was expressly advised concerning his right to counsel when he was served with DHS's arrest warrant.  Nunez also signed the notice of rights explicitly informing him that he "ha[d] the right to contact an attorney or other legal representative to represent [him] at [his] hearing, or to answer any questions regarding [his] legal rights in the United States."

This court has employed a three-part test to determine whether IJs have afforded noncitizens undergoing deportation proceedings the right to counsel:   "[A]t a minimum [IJs] must (1) inquire whether the petitioner wishes counsel, (2) determine a reasonable period for obtaining counsel, and (3) assess whether any waiver of counsel is knowing and voluntary."  *Ram v. Mukasey,* 529 F.3d 1238, 1241–42 (9th Cir. 2008) (cleaned

up) (quoting *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005)).

At his removal proceeding, Nunez was given several opportunities to indicate that he wished to obtain counsel. And indeed, two members of Nunez's group *did* want extra time to try to obtain counsel. After those individuals expressed interest in obtaining counsel, the IJ rescheduled each of their proceedings in front of the entire group of noncitizens present, giving the two each a month in which to seek representation. Further, after those two individuals' proceedings were rescheduled, the IJ again asked the other noncitizens present if they wished to seek counsel. Nunez, having just witnessed two individuals say they wanted to try to obtain counsel and receive time to do so, again did not express a desire to seek counsel. The record reflects that the rest of the group then responded affirmatively that they wished to waive their right to counsel.[11] The record demonstrates that this waiver was knowing and voluntary.

### b. Nunez was not prejudiced by any violation regarding voluntary departure

Nunez argues that the IJ failed to properly consider his application for voluntary departure, resulting in a violation of his due process rights. He also argues that he was prejudiced by this alleged violation because it is plausible that an IJ who properly considered his claim would have granted him voluntary departure. Again, even if both contentions were true, this would not excuse Nunez's failure to overcome §§ 1326(d)(1) and (2). But neither is accurate.

---

[11] Nunez reiterates that the audio recording does not allow for an understanding of "how any *particular* noncitizen answered." But we find this argument unavailing for the reasons explained *supra* note 9.

"The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief.'" *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (per curiam) (quoting *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000)). As we have held, IJs may violate due process if they "stat[e] that [an] alien is eligible for relief, but immediately negat[e] that statement." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015).

Nunez does not dispute that he was informed of his right to seek relief in the form of voluntary departure. Rather, Nunez claims that his due process rights were violated because the IJ categorically foreclosed voluntary departure relief for any noncitizens with criminal records. But Nunez must not only allege a violation: he must also demonstrate that he was prejudiced by the alleged violation. "To prove prejudice, an alien seeking a discretionary form of relief must make a 'plausible showing' that an IJ presented with all of the facts would exercise discretion in the alien's favor." *Id.* at 927 (citing *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263–64 (9th Cir. 2013), *abrogated on other grounds as recognized in Portillo-Gonzalez*, 80 F.4th at 918).

During Nunez's removal proceeding, the IJ concluded his explanation of voluntary departure by noting that "in all cases, you must have a clean police record, and clean immigration record, and prove you deserve voluntary departure," or he would deny any such request "in the exercise of [his] discretion." Nunez argues that this demonstrates that the IJ categorically foreclosed voluntary departure relief for all noncitizens seeking voluntary departure with criminal records.

But despite the IJ's blanket statement, the IJ conducted an individual colloquy with Nunez, specifically asking about his drug conviction.  After being told by the government attorney that Nunez had been convicted of possession of a controlled substance while armed, and sentenced to 270 days in jail, the IJ asked Nunez what the drug was, and Nunez answered that "it was meth."  The IJ also, in response to Nunez's specific request for voluntary departure, told him that because of his conviction, voluntary departure would not "do [Nunez] any good."  The IJ also asked Nunez whether "anybody would persecute [him] or torture [him] in Mexico," to which Nunez responded "[n]o."  This demonstrates that the IJ, as he was required to do, exercised discretion.

And when the relevant form of relief is discretionary, as here, the noncitizen must also demonstrate prejudice by "mak[ing] a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor."  *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998), *as amended on denial of reh'g* (Mar. 11, 1999).  Plausibility requires more than a "showing of mere possibility or conceivability, which we have plainly held is insufficient to satisfy the prejudice prong of § 1326(d)(3)." *United States v. Valdez-Novoa*, 780 F.3d 906, 915 (9th Cir. 2015).

"The factors relevant to an IJ deciding whether to grant voluntary departure are the alien's negative and positive equities." *Id.* at 917.  Positive equities include a noncitizen's length of residence in the United States, "close family ties to the United States, and humanitarian needs." *Rojas-Pedroza*, 716 F.3d at 1265.  Factors counseling against relief include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration

laws; [and] the existence, seriousness, and recency of any criminal record." *Id*. (quoting *In re Arguelles-Campos*, 26 I. & N. Dec. 811, 817 (BIA 1999)). The plausibility inquiry also looks to whether "aliens with similar circumstances received relief." *Id*. at 1263.

Nunez highlights various positive equities supporting voluntary departure, such as his entering the United States as a child; his engagement to a U.S. citizen, and his having a U.S. citizen daughter. But at the time of his removal proceedings, Nunez's criminal history included both a recent conviction for possession of methamphetamine while armed and an outstanding charge for possession of a controlled substance. And Nunez fails to cite a single case in which similarly situated noncitizens received relief in the form of voluntary departure. Further, as we have held, "the existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure." *Valdez-Novoa*, 780 F.3d at 920. Nunez does not even meet that bar. The facts of Nunez's criminal history thus make it implausible that Nunez would have received relief. Because Nunez cannot demonstrate prejudice, entry of the Removal Order against him was not fundamentally unfair.

* * *

Each element of § 1326(d)'s bar on collateral attacks to removal orders is mandatory. *See Palomar-Santiago*, 593 U.S. at 329. And Nunez satisfies none of them: he did not exhaust his administrative remedies pursuant to § 1326(d)(1); he was not deprived of the opportunity for judicial review under § 1326(d)(2); and entry of the Removal Order was not fundamentally unfair under

§ 1326(d)(3).  Accordingly, Nunez's collateral attack on the Removal Order cannot proceed.

## V.  CONCLUSION

For the reasons above, Nunez satisfies none of § 1326(d)'s three mandatory requirements.  We therefore affirm the district court's denial of Nunez's motion to dismiss his indictment.

**AFFIRMED.**